Charles HILL and Helen Hill, Husband and Wife, Appellants

v.

CITY OF BETHLEHEM.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2006.
Decided Oct. 12, 2006.

Kevin L. Orloski, Allentown, for appellants.

Timothy P. Brennan, Bethlehem, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Charles Hill and Helen Hill (together, Landowners) appeal from the order dated January 25, 2006, and docketed January 31, 2006, of the Court of Common Pleas of Northampton County (trial court), which, after reconsideration, sustained the City of Bethlehem's (City) preliminary objections to Landowners' petition for appointment of a board of view (Petition). We affirm.

On July 19, 2005, Landowners filed a Petition pursuant to section 502(e) of the Eminent Domain Code [1] (Code), claiming a de facto taking of their home located at 620 Ridge Street (Property) in the City [2] and requesting that the trial court appoint a board of view to determine Landowners' resulting damages. In support of their claim, Landowners averred that their Property was part of a double house/row house, the other half of which was owned by Kimberly Fletcher (Fletcher). On October 13, 2004, the City notified Landowners that the outside wall of Fletcher's property might collapse, that this could result in the collapse of Landowners' Property and that Landowners must vacate their Property immediately. Landowners complied. In early May 2005, the City demolished Landowners' Property, making it unimproved real estate. (Petition, ¶¶ 1, 6–8, 12, 15.)

In response to Landowners' Petition, the City filed timely preliminary objections alleging that the trial court lacked jurisdiction and that the Petition was legally insuf-

---

1. Act of June 22, 1964, Sp. Sess., P.L. 84, *as amended,* 26 P.S. § 1–502(e). Although repealed and replaced by Act 34 of 2006 (Act 34), Act No. 2006–34, the Eminent Domain Code governs this case because, with certain exceptions not applicable here, Act 34 applies only to condemnations effected on or after its September 1, 2006, effective date. *See* Section 6(1) of Act 34.

2. In its opinion, the trial court states that Landowners' Property is located at 622 Ridge Street; however, this is the address of Kimberly Fletcher's property.

ficient.[3] Specifically, the City maintained that: the facts averred in the Petition did not support a de facto taking claim; the allegations described an exercise of police power rather than eminent domain power; and, because the matter involves an exercise of police power, the trial court did not have equitable jurisdiction. The City also incorporated and attached the deposition testimony of Craig Hynes (Hynes), the City's Chief Code Official, in which he detailed the City's discovery that the outer wall of the Fletcher property was bulging and that the common wall between the Fletcher's property and Landowners' Property would not support Landowners' Property if the Fletcher property's outer wall failed. (City's Preliminary Objections (P.O.), ¶¶ 8, 9, 11, 14, 15, Exh. C.)

Landowners filed an Answer to the City's preliminary objections in which they denied, as being a conclusion of law, that the allegations in their Petition described an exercise of the City's police power rather than its eminent domain power. Landowners further denied that Hynes' opinions were established facts. (Answer, ¶¶ 9, 10, 14.)

By order dated November 15, 2005, the trial court overruled the City's preliminary objections. The City subsequently filed a Motion for Reconsideration (Motion), requesting that the trial court reconsider its decision and hold an evidentiary hearing to resolve outstanding factual issues. Landowners opposed the Motion, arguing, *inter alia*, that the City waived its right to an evidentiary hearing by not requesting one when the City originally filed its preliminary objections. The trial court granted the Motion and held an evidentiary hearing, subject to Landowners' objection regarding waiver.

At the hearing, only the City offered evidence, which consisted of Hynes' testimony and various exhibits. Hynes testified that in April 2004, he received a complaint that a wall of the Fletcher property was visibly bowing. (R.R. at 31a.) He testified regarding his inspections of the Fletcher property and his discussions with Fletcher regarding the need to remedy the situation. Hynes stated that, in late September or early October 2004, it became apparent that Fletcher would not have the financial resources to repair the wall. In addition, around that same time, there was a major rainstorm and flooding which caused the wall of the Fletcher property to shift substantially. Hynes stated that on October 12, 2004, he posted the Fletcher property, verbally notified Landowners of the situation with the Fletcher property, and, for the first time, he asked to enter Landowners' Property to inspect the wall separating the properties. At that time, Hynes noticed that the two houses were not "separate" because they did not have a separation wall, or firewall, between them.[4] (R.R. at 35a–37a.) According to Hynes, he explained to Landowners that, because of the way the common wall was constructed, it might collapse, and, consequently, they were in imminent danger. (R.R. at 40a.) Hynes testified that he declared Landowners' Property to be dangerous and posted the Property as unsafe for human occupancy; he then gave Landowners three days to evacuate their Property.[5] (R.R. at 41a, 66a, 67a.) Hynes further testified that

---

**3.** The City filed its preliminary objections pursuant to Pa. R.C.P. No. 1028(a)(1), (4), rather than the Code.

**4.** Although he had been in Fletcher's basement prior to this time, Hynes explained that he could not tell that the structures were one because the Fletcher property had a finished basement, making it impossible to observe the floor joists between the two properties. (R.R. at 52a–53a.)

**5.** Hynes also notified Landowners of the situation by letter dated October 13, 2004. That letter further stated that construction of an

from a structural or engineering perspective, the two properties are one, (R.R. at 40a), and, as a result, it would have been extremely difficult to raze the Fletcher property without causing severe damage to Landowners' Property. (R.R. at 44a.)

The trial court concluded that the City did not waive its right to an evidentiary hearing, and, because there was an outstanding factual issue, the trial court was required to hold an evidentiary hearing. Based on the evidence adduced at the hearing, the trial court concluded that the City acted pursuant to its police power rather than its eminent domain power. Because the Code does not apply to a taking done pursuant to police power, the trial court sustained the City's preliminary objections to Landowners' Petition. Landowners now appeal to this court.[6]

Landowners first argue that the trial court erred in granting the City's request for a hearing. Landowners continue to maintain that the City waived its right to an evidentiary hearing by failing to request one at the time the City filed its preliminary objections. Landowners argue that, by granting the City's Motion, the trial court has incorrectly given the City a "second bite of the apple" and, in effect, permitted the City to file *nunc pro tunc* preliminary objections.[7] We disagree.

Section 504 of the Code provides the procedure following the filing of a petition for appointment of a board of view. That section provides that objections to the appointment of viewers may be raised by preliminary objections and that objections not included are waived. 26 P.S. § 1–504. "[T]he general rule is that all preliminary objections must be raised at one time and in one pleading."[8] *Skokut*

---

approved firewall would be required before Landowners could re-occupy the Property. (R.R. at 66a.) Hynes testified that Fletcher had provided him with a repair estimate of $49,000 for her property. (R.R. at 55a.) The City obtained a cost assessment, apparently after the storm, indicating that the cost to repair the Fletcher property was $111,800 and that the cost to repair Landowners' Property was $21,000; the cost to demolish both properties was $51,000. (R.R. at 68a, Exh. F.)

6. This court's scope of review of a trial court's ruling on preliminary objections to a petition for appointment of a board of view is limited to determining whether there is competent evidence in the record to support the necessary findings and whether the trial court committed an error of law. *Skokut v. MCI*, 149 Pa.Cmwlth. 211, 613 A.2d 55 (1992).

7. Because the City preserved the issue of the nature of the taking by raising it in its preliminary objections, we reject Landowners' argument that the trial court has, in effect, impermissibly allowed the City to file *nunc pro tunc* preliminary objections or given the City a "second bite of the apple." The City did not seek to raise additional issues in its Motion;

therefore, the case of *Maurizi v. Department of Transportation*, 658 A.2d 485 (Pa.Cmwlth. 1995), cited by Landowners, does not control here.

Landowners also point out that the City improperly filed its preliminary objections pursuant to the Pennsylvania Rules of Civil Procedure, rather than the Code. However, Landowners did not raise this issue in their Answer and did not file preliminary objections to the City's preliminary objections in the form of a motion to strike, which would have been the proper procedure to raise such an issue. *See German v. City of Philadelphia*, 683 A.2d 323 (Pa.Cmwlth.1996), *appeal denied*, 549 Pa. 707, 700 A.2d 444 (1997). Therefore, having failed to timely raise this issue, Landowners have waived any objection to the form of the City's preliminary objections. *See id.*

8. In eminent domain proceedings, preliminary objections serve a broader purpose than ordinary preliminary objections, *Stein v. City of Philadelphia*, 125 Pa.Cmwlth. 225, 557 A.2d 1137 (1989); *Nether Providence Township v. Jacobs*, 6 Pa.Cmwlth. 594, 297 A.2d 550 (1972), and are intended as a procedure to expeditiously resolve threshold legal issues,

*v. MCI*, 149 Pa.Cmwlth. 211, 613 A.2d 55, 58 (1992). However, section 504 of the Code also states, "[i]f an issue of fact is raised, evidence may be taken." 26 P.S. § 1–504. In interpreting this provision of section 504, this court has held that when preliminary objections are filed in a de facto taking case,

> [t]he trial court must determine first whether, as a matter of law, the averments of the petition for the appointment of viewers, taken as true, in addition to any stipulated facts, are sufficient to state a cause of action for a de facto taking. If not, the preliminary objections must be sustained and the petition dismissed or allowed to be amended. If the averments, taken as true, *might* establish a de facto taking, the trial court **must** take evidence by depositions, or otherwise, *so that a judicial determination might be made.*

*Stein v. City of Philadelphia*, 125 Pa. Cmwlth. 225, 557 A.2d 1137, 1140 (1989) (bold emphasis added); *see also Millcreek Township v. N.E.A. Cross Company*, 152 Pa.Cmwlth. 576, 620 A.2d 558 (1993), *appeal denied*, 537 Pa. 655, 644 A.2d 739 (1994). "Stated another way, if the preliminary objections raise an issue of fact, the resolution of which is necessary for determining whether a de facto taking has occurred, the court must hold an evidentiary hearing." *Millcreek Township*, 620 A.2d at 560.

In its preliminary objections, the City raised the legal issue of the nature of the taking, i.e., whether the City's actions constituted an exercise of the City's police power or its eminent domain power, (City's P.O. ¶ 9), as well as factual disputes surrounding that issue. In particular, paragraph 14 of the City's preliminary objections raises factual disputes regarding whether the common wall between Fletcher's property and Landowners' Property would support Landowners' Property if the outer wall of the Fletcher property failed and whether the Property was in danger of immediate collapse, thereby justifying the need to exercise the City's police power.[9] (City's P.O. ¶ 14.)

■ Because the City's preliminary objections raised factual issues that needed to be resolved before the trial court could determine whether a de facto taking occurred, the trial court was required to take evidence even absent a party request for an evidentiary hearing. See *Millcreek Township*. Indeed, where trial courts failed to take evidence regarding disputed factual issues, this court remanded the matter to the trial courts to make an evidentiary record and determine whether a de facto taking occurred, without regard to whether either party requested an evidentiary hearing. *See, e.g., Millcreek Township; Skokut; Greger.* Although the trial court should have held the evidentiary hearing prior to issuing its initial determination,[10] the fact that it did so afterward upon the City's Motion does not constitute reversible error.

---

*Nether Providence.* Indeed, the trial court must first determine whether a de facto taking has occurred before sending the matter to a board of view to determine damages. *See Millcreek Township v. N.E.A. Cross Company*, 152 Pa.Cmwlth. 576, 620 A.2d 558 (1993), *appeal denied*, 537 Pa. 655, 644 A.2d 739 (1994); *Greger v. Canton Township*, 25 Pa. Cmwlth. 279, 360 A.2d 792 (1976).

9. That there are disputed facts is further demonstrated by Landowners' Answer denying that Hynes' opinions were established fact. (Landowners' Answer ¶ 14.)

10. Apparently, the trial court failed to hold an evidentiary hearing initially because it was under the mistaken belief that one of the parties had to request such a hearing. (*See* Trial ct. op. 1/31/06, at 4, n. 1.)

Landowners next argue that the trial court's initial order overruling the City's preliminary objections was correct as a matter of law under this court's decision in *Stein,* in which we stated, "[w]hile the governmental agency could abate the nuisance created by the other properties without monetary damages, it cannot abate the injury so as to damage the property of another." [11]  *Stein,* 557 A.2d at 1140. However, unlike the situation in *Stein,* where the landowner's property was not deemed to be imminently dangerous, the evidence here established that Landowners' Property was not structurally sound and was in danger of immediate collapse.[12] Based on this critical distinction, we reject Landowners' argument that *Stein* controls here.

■■■ In order to establish a de facto taking, the burden is on the property owner to show that exceptional circumstances exist which substantially deprive the property owner of the beneficial use and enjoyment of his or her property.[13] *German v. City of Philadelphia,* 683 A.2d 323 (Pa. Cmwlth.1996), *appeal denied,* 549 Pa. 707, 700 A.2d 444 (1997). Further, the property owner must show that this substantial deprivation was occasioned by the actions of an entity clothed with the power of eminent domain, resulted from the exercise of that power and that the damages sustained by the owner were the immediate, necessary and unavoidable consequence of that exercise. *Id.* The mere fact that a taking has occurred does not necessarily give rise to a cause of action under the Code because acts not done in the exercise of the right of eminent domain cannot serve as the basis of a proceeding in eminent domain. *Id.* Thus, when determining whether a compensable taking under the Code has occurred, the dispositive question becomes whether the act complained of was, in fact, an exercise of eminent domain power. *Id.*

■■■ The eminent domain power is the power to take property for public use. *Estate of Blose ex rel. Blose v. Borough of Punxsutawney,* 889 A.2d 653 (Pa.Cmwlth. 2005). "The police power, on the other hand, involves the regulation of property to promote the health, safety, and general welfare of the people." *Id.* at 657 (quoting *Balent v. City of Wilkes–Barre,* 542 Pa. 555, 565, 669 A.2d 309, 314 (1995)).

**11.** In *Stein,* the landowner filed a petition for the appointment of a board of view, alleging a de facto taking of her property as a result of the City of Philadelphia's demolition of two neighboring properties which were deemed imminently dangerous. Due to the demolition, the landowner's property, *which had not been deemed imminently dangerous,* suffered substantial structural damage rendering it uninhabitable. The City of Philadelphia filed preliminary objections in the nature of a demurrer which the trial court sustained, reasoning that because the property was damaged as a consequence of an exercise of police power rather than eminent domain power, there was no taking. In rejecting this reasoning, this court stressed that because the landowner's property was *not* deemed to be a nuisance, "[t]here was no justification for such conduct and the agency *may* be responsible for damages resulting therefrom."

*Stein,* 557 A.2d at 1140 (emphasis added). We note that in *Stein,* this court did *not* hold that a de facto taking had occurred as Landowners maintain; rather, we remanded the matter to the trial court to make findings and determine whether the landowner established a de facto taking as a matter of law.

**12.** In *Stein,* the court recognized that a "governmental agency has not 'taken' anything when it asserts its police power to abate a nuisance, and need not provide compensation when it destroys the value of the property by abating the nuisance." *Stein,* 557 A.2d at 1139–40.

**13.** The burden of proving a de facto taking is a heavy one, and each case turns on its own unique facts. *German.*

Here, the trial court correctly concluded that the City's actions constituted a proper exercise of the City's police power rather than its eminent domain powers. Landowners, the burdened party, did not assert that their Property was taken for any public use, and they offered no evidence of such a taking. On the other hand, the City, through Hynes' credible testimony, established that the Fletcher property was at imminent risk of collapse, and if that occurred, there was no structural aspect of Landowners' Property that would prevent it from collapsing as well. Additionally, Hynes' testimony and the exhibits established that the City condemned and subsequently demolished Landowners' Property because it was in imminent danger of collapse and, consequently, unsafe for human occupancy. (R.R. at 40a–42a, 46a, 67a, 71a.)

Because the City's actions arose from its power to promote the health, safety and general welfare of its people, those actions constitute an exercise of the City's police power. Consequently, Landowners may not proceed in eminent domain under the Code, *German,* and the trial court properly sustained the City's preliminary objections and dismissed Landowners' Petition.[14]

Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of October, 2006, the order of the Court of Common Pleas of Northampton County, dated January 25, 2006, and docketed January 31, 2006, is hereby affirmed.

14. Landowners also argue that the City's demolition of their Property was a de facto taking because, although the City knew of the problem for several months, it did not notify Landowners, thereby depriving Landowners of the opportunity to remedy the structural problem. Further, Landowners contend that the evidence demonstrates that the City demolished Landowners' Property for financial convenience and not necessity. We need not address these arguments, however, because they are not relevant to our determination that the City acted pursuant to its police powers rather than its eminent domain powers.