Michael **RISTVEY** Jr., Nancy K. Ristvey, husband and wife; Nedra J. Lewis, widow; and Chester B. Scholl Jr., Appellants

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

Commonwealth Court of Pennsylvania.

Argued April 16, 2012.

Decided July 11, 2012.

426

William P. Bresnahan and John F. Dwyer, Pittsburgh, for appellants.

Chester J. Karas, Jr., Senior Assistant Counsel, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge McGINLEY.

Michael Ristvey, Jr., (Mr. Ristvey) Nancy K. Ristvey, Nedra J. Lewis, and Chester B. Scholl, Jr. (Appellants) appeal from the order of the Court of Common Pleas of Mercer County (trial court) which sustained the Preliminary Objections of the Pennsylvania Department of Transportation (DOT) and dismissed Appellants' Petition for Appointment of Viewers.

Appellants owned 23 acres of vacant, residentially-zoned land on the eastern side of Pennsylvania State Route 18 in Hermitage, Pennsylvania (Property). In 2001, the Commonwealth acquired 8,500 square feet of the Property by filing a Declaration of Taking for the purpose of making improvements to Route 18.[1] That matter was resolved amicably in 2009.

In the meantime, in the Spring of 2004, Cedarwood Development Corporation (Cedarwood), the owner and developer of the commercial property located on Route 18 directly across from the Property, applied to DOT for a Highway Occupancy Permit (HOP). Cedarwood planned to develop its property for a Wal–Mart Store and sought to reconfigure the five-lane Route 18 to include, *inter alia*, a new traffic signal and the addition of a dedicated, north-bound, left turn stand-by lane to service the Wal–Mart Store.

Cedarwood's application for the HOP was granted in August of 2004.

---

1. Specifically, the roadway was widened from two lanes to five lanes.

In August of 2005, Mr. Ristvey, an attorney, first observed traffic signal equipment on Route 18 in front of the Property. Construction pursuant to the HOP was completed in August 2006. Mr. Ristvey did not contact DOT until three years later in 2009 when he requested a copy of the HOP and the traffic impact study.

On July 29, 2010, Appellants filed a Petition for Appointment of a Board of Viewers and alleged a *de facto* taking "within the meaning of Article I, Section 10 of the Pennsylvania Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States." Petition for the Appointment of a Board of Viewers, ¶ 14 at 4; Reproduced Record (R.R.) at 8a. They claimed that the issuance of the HOP rendered the Property "worthless" because the "stacking" of cars in the newly configured left turn stand-by lane made it impossible, at times, to safely make a left turn out of the Property. They alleged that DOT's actions rendered the Property "worthless" and "deprive[d] the Plaintiffs–Condemnees [Appellants] of the full and normal use and enjoyment of their property." Petition for the Appointment of a Board of Viewers, ¶ 10 at 4; R.R. at 8a. Appellants also alleged that DOT failed to follow its own regulations[2] by failing to "obtain the consent of adjacent and affected property owners in the form of an agreement of release." Petition for the Appointment of a Board of Viewers, ¶ 5(f) at 3; R.R. at 7a.

DOT filed Preliminary Objections and argued that the issuance of the HOP was an exercise of its police power—*not* the result of an eminent domain action. DOT argued that the HOP was properly granted pursuant to its statutory and regulatory authority and that Appellants failed to pursue an administrative remedy in a timely fashion by failing to intervene pursuant to 1 Pa.Code §§ 35.9 and 35.10 and 67 Pa. Code § 491.4(a). DOT maintained that the granting of the HOP was "reasonable" and that Appellants failed to show the existence of exceptional circumstances.

The trial court considered the deposition testimony of Mike McMullen (McMullen), DOT's Highway Occupancy Permit Manager. McMullen testified that the HOP was granted because Cedarwood met all the technical conditions of the application. Deposition of Mike McMullen (McMullen Deposition), November 19, 2010, at 47; R.R. at 75a. McMullen testified that there was no formal requirement that DOT issue notice of the issuance of a HOP to adjoining property owners. McMullen Deposition at 43; R.R. at 71a.

McMullen agreed that turning left out of the property may be "a little ... problematic" depending on the number of cars in the left turn stand-by lane. McMullen Deposition at 33; R.R. at 60a. He stressed, however, that if Appellants wished to develop the Property they may request a HOP for "right turn in and out" access, which would not be affected by the current left turn stand-by lane. McMullen Deposition at 44; R.R. at 72a. Other properties have successful "right turn in and out," including the Olive Garden Restaurant in Erie County, Primanti Brothers' Restaurant in Grove City, and the Sheetz Convenience Store on Route 18.

Mr. Ristvey also testified *via* deposition. Mr. Ristvey believed he could not develop the Property "to its full potential" because

---

**2.** The Code section relied on by Appellants is Section 441.8(j)(5) of DOT's regulations, 67 Pa.Code § 441.8(j)(5), which requires that "a HOP applicant placing an auxiliary lane in front of property of another person secure the approval of the other person or indemnify the Commonwealth against any action which the other person may bring against the Commonwealth."

of the "poor access." Deposition of Michael Ristvey, Jr. (Ristvey Deposition), November 19, 2010, at 7; R.R. at 97a. He believed that the Property "was next to worthless" because "nobody is going to want it for a right turn only location." Ristvey Deposition at 22; R.R. at 112a. Mr. Ristvey admitted that he did nothing when he first learned of the HOP after he observed construction of the traffic signal in 2005. Ristvey Deposition at 8; R.R. at 98a.

In an opinion and order dated May 5, 2011, the trial court sustained DOT's Preliminary Objections and dismissed Appellants' Petition for Board of Viewers. The trial court found that DOT's actions were not an exercise of its eminent domain power which required just compensation. Rather, DOT's grant of the HOP and reconfiguration of Route 18 were valid exercises of its police power, which did not require compensation. Specifically, the trial court found no evidence that DOT acted either capriciously or arbitrarily. DOT received the request of Cedarwood, methodically considered it and investigated its implications on the basis of the available facts. DOT was unaware of plans to develop the Property although DOT inquired about the matter through the local authority. The trial court also found that there were no plans to use the Property in any particular manner that would call into question the positioning of the traffic signal. Despite Mr. Ristvey's unsupported opinion that the Property was now worthless, any impact of the HOP on the Property was speculative. To the extent that Appellants argued that DOT acted unreasonably because it failed to notify them directly about the HOP, the trial court rejected the argument because it was un-

supported by any legal authority. According to McMullen, DOT is not required to notify adjoining property owners of the issuance of a HOP.

■ On appeal[3], Appellants argue that the trial court erred when it dismissed their Petition for Appointment of Board of Viewers. They claim that DOT's purpose in requiring Cedarwood (as a condition of the HOP) to add a left turn, stand-by lane, in front of Appellants' Property, was for the primary and paramount benefit of the traveling public. Therefore, DOT's actions constituted an exercise of its powers of eminent domain and the trial court erred when it applied the "reasonableness test."

### Police Power Versus Eminent Domain

■ First, Appellants argue that the trial court erred because DOT's actions were clearly an exercise of its eminent domain power, not its police power. This Court does not agree.

■ Eminent domain is the power to take property for public use and compensation must be paid for property that is taken, injured or destroyed. *Estate of Blose ex rel. Blose v. Borough of Punxsutawney*, 889 A.2d 653 (Pa.Cmwlth.2005). Police power, on the other hand, is the inherent power of the government to enact and enforce laws for the promotion of health, safety, and general welfare. *Id.* The difference lies in the nature of the action at issue. Did the government enact or enforce a law or rule, or otherwise "control" the use of property for the health, safety or welfare of the public? Or did it take property for the public's benefit?

---

3. This Court's scope of review of a trial court's ruling on preliminary objections to a petition for appointment of viewers is limited to determining whether there is competent evidence in the record to support the necessary findings and whether the trial court committed an error of law. *Skokut v. MCI*, 149 Pa.Cmwlth. 211, 613 A.2d 55 (1992).

In *In Re Condemnation by Commonwealth of Pennsylvania Department of Transportation of Two Billboards Located on T.R. 209*, 69 Pa.Cmwlth. 609, 452 A.2d 83 (1982), this Court found that DOT's removal of billboards was a reasonable exercise of its police power, not its eminent domain power. In that case, Northeast Outdoor Advertising, Inc. (Northeast) owned· eight billboards in a residentially zoned area along Route 61 in Pottsville, Pennsylvania. The billboards were permitted in that area as prior nonconforming uses. Subsequently, the areas where the billboards were located were rezoned to permit commercial usage. DOT informed Northeast that it was required to request an annual permit for each billboard pursuant to the provisions of Section 7 of the Outdoor Advertising Control Act (Act).[4] Northeast only applied for and was granted permits for four billboards. DOT removed the remaining four billboards pursuant to its authority under the Act.

Northeast filed a Petition for an Appointment of Viewers seeking compensation for the eight billboards. DOT filed preliminary objections which the Court of Common Pleas of Schuylkill County· sustained on the grounds that DOT removed the four billboards pursuant to its police power, not its eminent domain power.

On appeal, this Court affirmed. Because DOT removed the billboards due to Northeast's failure to seek the required permits the action was deemed to be pursuant to DOT's police powers. The action involved DOT's enforcement of its laws for the promotion of the public health, welfare and safety. DOT did not "take" Northeast's billboards for the benefit of the public. Explaining the critical difference between police power and eminent domain powers, this Court stated:

Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property....

No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination of the right of its reasonable regulation by the government clearly necessary to preserve the health, safety, or morals of the people. Obedience to such regulation is not taking property without due process; that clause does not qualify the police power.

*In Re Condemnation of Two Billboards*, 452 A.2d at 85, *quoting Reilly v. Department of Environmental Resources*, 37 Pa. Cmwlth. 608, 391 A.2d 56, 58 (1978).

Similarly, in *Hill v. City of Bethlehem*, 909 A.2d 439 (Pa.Cmwlth.2006), the City of Bethlehem (City) was found to have acted pursuant to its police powers, not eminent domain powers, when it demolished a dangerous row house. Again, the act at issue was the government's enforcement of its laws and regulations for the promotion of the health, welfare and safety of the public. There was no taking of property for the public's benefit.

There, Charles and Helen Hill (Hills) were the owners of one-half of a row house. The other half was owned by Kimberly Fletcher (Fletcher). On October 13, 2004, the City notified the Hills that a wall

4. Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. § 2718.107.

of Fletcher's property was visibly bowing and was in danger of collapse. The City declared the Hills' property to be dangerous pursuant to local ordinance and posted it as "unsafe for human occupation." *Hill,* 909 A.2d at 441. The City ordered the Hills to evacuate their property and they complied. The City later demolished the row house.

The Hills filed a Petition pursuant to Section 502(e) of the former Eminent Domain Code [5] (Code), claiming a *de facto* taking of their home and requested an appointment of a board of viewers. The City filed preliminary objections which alleged, among other things, that the allegations in the Hills' Petition described an exercise of police power rather than the power of eminent domain. The Court of Common Pleas of Northampton County (trial court) found that the City acted pursuant to its police power, not its eminent domain power. Because the Code does not apply to a taking pursuant to police power, the trial court sustained the City's preliminary objections. The Hills appealed to this Court.

This Court explained that "[t]he mere fact that a taking has occurred does not necessarily give rise to a cause of action under the Code because acts not done in the exercise of the right of eminent domain cannot serve as the basis of a proceeding in eminent domain." *Id.* at 444. "The dispositive question is whether the act complained of was, in fact, an exercise of eminent domain power." *Id.*

In *Hill,* the City did not take the Hills' property for a public use. Rather, the City took control of the Hills' property because it was in imminent risk of collapse and unsafe for human occupancy. Because the City's actions arose from its power to promote the health, safety and general welfare of its citizens, those actions constituted an exercise of the City's police power. Consequently, the Hills could not proceed under the Eminent Domain Code and this Court found that the trial court properly sustained the City's preliminary objections and dismissed the Hills' petition.

### *DOT's Police Powers Under State Highway Law*

Section 420 of the State Highway Law [6] grants DOT the power to control the flow of traffic on State highways:

(a) The secretary is empowered to make reasonable rules and regulations governing the use of all State highways, and by the placement of official traffic control devices, or curbs, medians or other physical barriers, may control the flow of traffic thereon.

(b) The secretary may issue permits for the opening of streets and driveways onto State highways and for the opening of the surface and occupancy of State highways on terms and conditions established in department regulations.

Under its general police powers, DOT may restrict, or even prohibit, vehicular access to and from abutting property in order to promote and protect the public health, safety and welfare. *Commonwealth Department of Transportation v. Longo,* 98 Pa.Cmwlth. 120, 510 A.2d 832 (1986).

DOT's regulations provide that DOT may require, as it did here, a HOP to include a left turn, stand-by lane "to separate and protect left turning vehicles from through traffic if failure to do so would

---

5. Act of June 22, 1964, Special Sess. P.L. 84, *as amended,* formerly 26 P.S. §§ 1–101–1–903, repealed and replaced by Section 1 of the Act of May 4, 2006, No.2006–34.

6. Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. § 670–420.

result in an undue hazard to the traveling public." 67 Pa.Code § 441.8(j)(2). According to McMullen, a traffic signal was required because Cedarwood sought to install a high-volume driveway to accommodate over 1,500 cars per day. McMullen Deposition at 16; R.R. at 43a. He explained that DOT required Cedarwood to put in a dedicated left turn lane "for those vehicles traveling north on Route 18 approaching the signal and wanting to turn left into [Wal–Mart]." *Id.* DOT's requirement that Cedarwood include the left turn, stand-by lane was an enforcement of its regulations for the promotion of the health, safety and general welfare of the traveling public. DOT, in effect, enforced its regulations and in so doing controlled the use of Appellants' Property to some degree by restricting its access. It did not "take" Appellants' Property for a public use. Because DOT's actions constituted an exercise of the DOT's general police powers Appellants could not proceed under the Eminent Domain Code by filing a Petition for Appointment of a Board of Viewers. *Hill.*

Accordingly, this Court agrees with the trial court that DOT acted pursuant to its police powers, not eminent domain powers, when it required Cedarwood to construct the left turn, stand-by lane in front of the Property.

### Was DOT's Exercise of its Police Power Reasonable?

■■■ DOT's right to control the flow of traffic on state highways and ingress and egress from property to state highways, however, is not without limitation. While an abutting owner has no property or other vested interest in the continuation of an existing traffic pattern, the Commonwealth may not effect what amounts to a taking under the guise of its police power without paying compensation. *Wolf v. Department of Highways,* 422 Pa. 34, 220 A.2d 868

(1966). A person's right to private ownership of his property is only subject and subordinate to *reasonable* regulation by the government for the preservation of public health, safety, and morals. In other words, DOT may not "unduly intermeddle" with the rights of abutting landowners. *Nardo v. Pennsylvania Department of Transportation,* 123 Pa.Cmwlth. 41, 552 A.2d 718 (1988), *appeal denied,* 525 Pa. 651, 581 A.2d 576 (1990). If it does, then an exercise of its police powers may, in certain circumstances, constitute a compensable taking.

■■■ When deciding whether an exercise of the police power constitutes a compensable taking the question is whether the limitations imposed were reasonable under the particular facts presented and do not unreasonably interfere with the legally recognized property rights of the abutting land owner. *Wolf.*

In *Appeal of Commonwealth Department of Transportation,* 164 Pa.Cmwlth. 81, 644 A.2d 1274 (1994), Scott Schaeffer (Schaeffer) owned and operated an auto center at the intersection of Monocacy Road and Route 422. In 1992, DOT erected a medial barrier on Route 422 which eliminated left turns from westbound Route 422 onto Monocacy Road, and resulted in a detour of approximately 1 mile entering and leaving the Schaeffer property. Schaeffer filed an Eminent Domain action and alleged a *de facto* taking. DOT preliminarily objected. The Court of Common Pleas of Berks County overruled DOT's preliminary objections and DOT appealed.

On appeal, this Court found that the circuity of travel necessitated by the medial barrier did not sufficiently interfere with access to be substantial and compensable. The Court reaffirmed the well-settled principal that "a reasonable restriction

to an abutting property owner's right to access does not give rise to a compensable claim under the [Eminent Domain Code]." *Schaeffer*, 644 A.2d at 1275. In that controversy, this Court noted that the detour was only a mile and that Schaeffer still had direct access from the lanes of traffic abutting his property.

 In *Longo*, Philip and Beverly Longo (Longos) owned property which abutted Route 352 in Chester County. Because an embankment and hillcrest on the right side of the Longos' driveway restricted the sight distance to the right for motorists exiting the driveway, DOT required the Longos to post a "No Left Turn" sign and prohibited left turns into the driveway. The Longos sought review of DOT's regulation. This Court found that the evidence demonstrated that DOT's "No Left Turn" restrictions were reasonable and constituted "a simple, efficient and economical means" of remedying a hazardous condition. *Longo*, 510 A.2d at 835. The fact that the restrictions caused the property owners some inconvenience did not render DOT's regulatory action unreasonable.[7]

 In this controversy, this Court is unable to conclude that inclusion of the left turn, stand-by lane in front of Appellants' Property was unreasonable in light of the fact that: (1) the Property was vacant and undeveloped; and (2) the left turn, stand-by lane did not interfere with any existing traffic patterns relative to the Property;

and (3) without the left turn, stand-by lane vehicles would have to stop in the traveling lane to wait to turn into the Wal–Mart Store. The left turn, stand-by lane was necessary to avoid a potential hazardous condition on the highway. There was no credible evidence that the reconfiguration unreasonably interfered with Appellants' access to and from the Property, or that it rendered the Property valueless. The only evidence Appellants presented was Mr. Ristvey's unsupported opinion that "nobody is going to want it." McMullen, on the other hand, explained that Appellants retained reasonable access to Route 18. They could apply for a HOP for "right turn in and out" access. He identified several properties which were successful with a "right turn in and out" access, and properties with such access are commonly seen throughout the State's highways, particularly when a highway is separated by a concrete barrier. McMullen also explained that with the cooperation of other abutting property owners, the Property could also be accessed by a high volume driveway at the traffic signal, much like the one that services the Wal–Mart Store across the street. As the trial court found, the record amply demonstrates that DOT investigated the options, inquired about abutting landowners, held meetings, and conducted traffic studies before it issued the HOP. There is no evidence to support Appellants' contention that DOT acted arbitrarily or capriciously.[8]

---

7. Diversions of traffic may be unreasonable if they are too long or circuitous. In *Jackson Gear Co. v. Pennsylvania Department of Transportation*, 657 A.2d 1370 (Pa.Cmwlth.1995), the property owner's necessity to travel circuitous routes of 6 and 11.5 miles was an unreasonable interference with property.

8. Appellants also argue that the Eminent Domain Code, 26 Pa.C.S. §§ 101–1106, does not require them to exhaust their administrative remedies prior to filing the Petition for Ap-

pointment of a Board of Viewers. They argue that, in any event, Section 441.8(j)(5) of DOT's regulations, 67 Pa.Code § 441.8(j)(5), requires that an HOP applicant placing an auxiliary lane in front of property of another person "secure the approval of the other person or indemnify the Commonwealth against any action which the other person may bring against the Commonwealth." No one sought Appellants' approval before the HOP was granted. This position is rejected because the regulations only provide that an applicant

For the foregoing reasons, this Court concludes that the trial court did not err when it dismissed the Petition for Appointment of a Board of Viewers. DOT acted reasonably pursuant to its police powers and Appellants are not entitled to compensation for any ostensible taking.

The order of the trial court is affirmed.

Judge COHN JUBELIRER did not participate in the decision in this case.

## ORDER

AND NOW, this 11th day of July, 2012, the Order of the Court of Common Pleas of Mercer County in the above-captioned matter is hereby affirmed.

**G.V., Petitioner**

v.

placing an auxiliary lane in front of another property either obtain approval from that owner *or* indemnify DOT. It does not include a notice requirement or that an agreement of release be obtained. If no approval is obtained, then DOT will be indemnified. Moreover, Mr. Ristvey had *actual notice* of the construction of the traffic signal yet he took no action, by filing a complaint or seeking an administrative remedy, until he filed his Petition for Appointment of Board of Viewers five years later.