IN THE COMMONWEALTH COURT OF PENNSYLVANIA

F.A. Investment Group Inc., F.A.　　:
Realty Investors Corp. and　　　　 :
Information Management Group, Inc.,:
　　　　　　　　　Appellants　:
　　　　　　　　　　　　　　　　 :　No. 2734 C.D. 2015
　　　　　　v.　　　　　　　　 :　Submitted: April 7, 2017
　　　　　　　　　　　　　　　　 :
City of Philadelphia　　　　　　 :


BEFORE:　　HONORABLE ROBERT SIMPSON, Judge
　　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　　HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI　　　　　　　FILED: May 4, 2017


F.A. Investment Group Inc., F.A. Realty Investors Corp. and Information Management Group, Inc. (collectively, Property Owners) appeal from the order of the Court of Common Pleas of Philadelphia County (trial court) sustaining the City of Philadelphia's (City) preliminary objections to Property Owners' petition for appointment of a board of view. We affirm.

On August 10, 2015, Property Owners filed a petition (Petition) in the trial court pursuant to Section 502(e) of the Eminent Domain Code[1] (Code)

---

[1] Act of June 22, 1964, Sp. Sess., P.L. 84, *as amended*, former 26 P.S. § 1-502(e). Although repealed and replaced by Act 34 of 2006 (Act 34), Act No. 2006-34, the Eminent **(Footnote continued on next page…)**

claiming that actions taken by the City resulted in a *de facto* taking of their property located at 6001 N. 17th Street in the City (Property).[2] They requested that the trial court appoint a Board of Viewers to determine Property Owners' resulting damages. In that Petition, Property Owners claimed the *de facto* taking occurred when, on March 11, 2003, the City padlocked, posted a cease and desist sign in front of the entrance door, and boarded and closed down the Property without any notice, forcing the building's tenants to vacate. Property Owners alleged that at the time, the Property had no existing housing, building or fire code violations.

The Petition also averred that on January 20, 1990, a City employee stated that the City would demolish any of the Property Owners' properties if they were in violation of the City's housing code and seize those properties under the Eminent Domain Code where such properties were needed by investors and developers. In support of that allegation, Property Owners went on to aver that 15 of their properties were demolished by the City between 1992 and 2003, and that the City, using the Eminent Domain Code, condemned "four major properties" of Property Owners, its shareholders and principals. Property Owners went on to aver that once the Property was boarded and then demolished, they were unable to

---

**(continued…)**

Domain Code governs this case because, with certain exceptions not applicable here, Act 34 applies only to condemnations effected on or after its September 1, 2006 effective date.

[2] In its preliminary objections, the City claimed that after reasonable investigation, it was without knowledge or information sufficient to form a belief as to Property Owners' ownership of the Property. From the record as well as a previous decision of this Court, *City of Philadelphia v. F.A. Realty Investors Corp.*, 95 A.3d 377, 378 (Pa. Cmwlth. 2014), it is clear that Property Owners owned the Property at the time in question.

pay real estate taxes, mortgage loans or keep the building insured, and the Property was lost through tax sale. They claimed the City provided no notice as to why the Property was sealed and that the City never initiated a subsequent legal action regarding the Property.

In response to Property Owners' Petition, the City filed preliminary objections[3] maintaining that: a *de facto* taking had not occurred as the Property was boarded up under the City's police power because the Property was an imminent danger to the health, safety and general welfare of the tenants as well as the public. For these reasons, the City requested that the Petition be dismissed for failure to state a claim. The trial court then issued a rule to show cause why the relief requested should not be granted.[4]

---

[3] "Preliminary objections are the exclusive method under the Eminent Domain Code of raising legal and factual objections to a petition for appointment of viewers which alleges a *de facto* taking." *German v. City of Philadelphia*, 683 A.2d 323, 325 n.5 (Pa. Cmwlth. 1996), *appeal denied*, 700 A.2d 444 (Pa. 1997). Preliminary objections in eminent domain proceedings serve a broad purpose and are intended to expeditiously resolve threshold legal issues. *Hill v. City of Bethlehem*, 909 A.2d 439, 442 n.8 (Pa. Cmwlth. 2006) (citation omitted). Before sending the matter to a board of view to determine damages, the trial court must first determine whether a *de facto* taking has actually occurred. *Id.*

[4] In response, Property Owners filed their own preliminary objections claiming that the City's preliminary objections should be stricken as premature pursuant to Section 504(d)(1) of the Code, formerly 26 P.S. § 1-504(d)(1), because the trial court had not yet appointed a Board of Viewers. Property Owners also claimed the City's preliminary objections should be stricken because they failed to provide any legal basis for the nine asserted affirmative defenses and failed to include a notice to plead to the new matter as required by Rule 1018 of the Pennsylvania Rules of Civil Procedure. The trial court's dismissal of Property Owners' preliminary objections has not been raised on appeal.

Before the trial court, Steven Frempong (Frempong), owner of the corporate entities F.A. Investment Group, Inc. and F.A. Realty Investors Corp., testified that on March 11, 2003, the day the Property was boarded, the wrong heating oil was delivered to the Property and "there were fumes in the sky." (Reproduced Record (R.R.) at 214a.) The police responded and told everyone to move from the Property. He stated that by the time the City's Department of Labor and Industry (L&I) inspectors arrived, the fumes were gone. He testified that he was told that the City's law department would contact him and he provided a current address but was not contacted. Frempong testified that since the Property was boarded, he has never been allowed back inside. He acknowledged that he did not appeal the L&I's decision to board the Property, did not file for any type of injunctive relief with the trial court, and never contacted L&I or the City's law department regarding the Property following the March 11, 2003 incident.

On behalf of the City, Joseph Diorio (Diorio), Chief of License Issuance with L&I's Department of Licenses and Inspections (Department) with 23 years of experience, testified that when violations presented a danger to human life, the Department would clear a building of tenants, then attempt to relocate them, as well as file a cease operations order against the property owner not to occupy the building until the outstanding violations were corrected. He testified that when a notice to cease operations is given, the building's owner can always enter the property to correct violations. He went on to state that all violations are appealable, and notices of violation inform the property owner where to appeal, who to contact, and how to obtain a temporary restraining order against the Department's order to cease operations. Diorio testified those notices are normally

4

sent to the address the property owner supplied when applying for a license. When no license is present, the Department uses the address on file with the Office of Property Assessment (OPA). Diorio stated that the notices in this case were sent to the address Property Owners provided to the OPA because Property Owners did not have a valid license.

The City, over the objection of Property Owners, entered into evidence records Diorio retrieved from the Department's electronic database regarding housing violations filed against the Property from 2001 to 2003. Those records showed that there were outstanding violations for: failure to maintain regular electrical service; failure to maintain a working elevator; non-functional or otherwise inappropriate fire detection, control and suppression systems including inappropriate fire extinguishers, insufficient smoke detectors and inappropriate fire hydrants; non-functional fire doors or smoke barrier doors; improperly stored hazardous materials; failure to comply with oil-burner-safety regulations; inappropriate emergency lighting systems; storing combustible material near heating equipment; exits that would be difficult to open in an emergency; inappropriately identified stairways, means of accessing the roof, or exits in case of emergency; insufficient heat provided to tenants; failure to maintain the required rental license; accumulated garbage; impermissible use of portable heating and cooking equipment; and open junction boxes and open wiring splices.[5]

---

[5] Notably, Property Owners failed to submit these documents as part of the Reproduced Record filed with this Court. The City then submitted a Supplemental Reproduced Record containing these documents, and they were also attached as an exhibit to the trial court's Rule 1925(a) opinion.

The trial court sustained the City's preliminary objections and dismissed Property Owners' Petition because Property Owners failed to establish that a *de facto* taking occurred since the City was acting under its police power, not its eminent domain power, when it boarded the Property.[6] This appeal followed.[7]

On appeal, Property Owners essentially argue that the trial court, by misconstruing the evidence, erred in not finding that they had made out a de *facto* taking of their Property.

To establish a *de facto* taking, a property owner must demonstrate that exceptional circumstances exist which substantially deprive him of the beneficial use and enjoyment of his property. *Hill v. City of Bethlehem*, 909 A.2d 439, 444 (Pa. Cmwlth. 2006) (citing *German v. City of Philadelphia*, 683 A.2d 323 (Pa. Cmwlth. 1996), *appeal denied*, 700 A.2d 444 (Pa. 1997)). He must also "show that this substantial deprivation was occasioned by the actions of an entity clothed with the power of eminent domain, resulted from the exercise of that power and that the damages sustained by the owner were the immediate, necessary and unavoidable consequence of that exercise." *Hill*, 909 A.2d at 444 (citing *German*).

---

[6] *See* Section A-503.1.1 of the Philadelphia Code which provides that "nothing shall prevent the code official from instituting appropriate remedies to protect occupants or the public from conditions which pose an immediate threat to health or safety."

[7] Our review of a trial court's ruling on preliminary objections to a petition for appointment of a board of view is limited to determining whether necessary findings are supported by substantial evidence and whether the trial court committed an error of law. *Ristvey v. Department of Transportation*, 52 A.3d 425, 429 n.3 (Pa. Cmwlth. 2012).

Just because a government action impacts property[8] does not give rise to a takings claim under the Code "because acts not done in the exercise of the right of eminent domain cannot serve as the basis of a proceeding in eminent domain." *Hill*, 909 A.2d at 444 (citing *German*).  It is well established that:

> [p]olice power involves the regulation of property to promote health, safety and general welfare and its exercise requires no compensation to the property owner, even if there is an actual taking or destruction of property, while eminent domain is the power to take property for public use, and compensation must be given for property taken, injured or destroyed.

*Redevelopment Authority of Oil City v. Woodring*, 445 A.2d 724, 727 (Pa. 1982) (citing *White's Appeal*, 134 A. 409 (Pa. 1926)).[9]

---

[8] As courts within the Commonwealth have repeatedly held:

> No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people.  Obedience to such regulation is not taking property without due process; that clause does not qualify the police power.  (Citations omitted).  Property is held under the implied obligation that the owner shall use it in such way as not to be injurious to the community.

*Estate of Blose v. Borough of Punxsutawney*, 889 A.2d 653, 658 (Pa. Cmwlth. 2005) (quoting *White's Appeal*, 134 A. at 411-12).

[9] As our Supreme Court has repeatedly stated:

> Judicial investigation into the validity of the police power should not scrutinize the wisdom of the policy emanating from the legislative branch, or whether the best means of achieving the

**(Footnote continued on next page…)**

Here, the trial court correctly determined that the City's actions were a proper exercise of its police power rather than its eminent domain power. That finding is amply supported by Diorio's testimony and significant documentation establishing the City's actions were prompted by the March 11, 2003 incident where fumes from the furnace were emitted into the building and into the air, placing its tenants and the general public at risk. In addition, the Property had serious uncorrected violations of the housing code.

The only evidence offered by Property Owners that the City was attempting to take the Property when it was boarded back in 2003 is Frempong's uncorroborated testimony regarding a statement allegedly made by some unknown city official back in 1990. This official allegedly stated that the City would demolish any properties that Property Owners owned or had an interest in if they were in any way in violation of the City's housing code or would seize such properties under the Code where they were needed by investors and developers. Even if the trial court had not rejected that testimony, it is so remote and so indefinite that it lacks any probative value. What Property Owners are trying to mask is that the loss of the Property is due to their own failure to correct the Property's outstanding violations. They made no attempt to enter the Property

---

**(continued…)**

> desired result have been selected. The court should examine only whether the statute has a recognized police purpose, and whether the purpose has a reasonable relation to the object to be attained.

*Balent v. City of Wilkes Barre*, 669 A.2d 309, 315 (Pa. 1995) (citing *White's Appeal*, 134 A. at 411).

despite having the ability to do so, failed to even contact the City after their Property was boarded, and failed to appeal the notice to cease operations.[10]

Accordingly, because the City's actions constitute a valid exercise of its police power, Property Owners may not proceed in eminent domain under the Code, and the trial court properly sustained the City's preliminary objections and dismissed the Petition.

_____
DAN PELLEGRINI, Senior Judge

---

[10] Property Owners contend that the City had the burden to prove it provided them with notice of the violations and an opportunity to correct them, and its failure to do so is a violation of due process. Given that Frempong acknowledged that he knew the Property had been boarded and did not appeal the notice to cease operations, and that he waited over 12 years to bring the action claiming a *de facto* taking, his claim that his due process rights were violated is without merit.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

F.A. Investment Group Inc., F.A. :
Realty Investors Corp. and :
Information Management Group, Inc., :
                    Appellants :
                                        : No. 2734 C.D. 2015
          v.                :
                                        :
City of Philadelphia              :

# **O R D E R**

AND NOW, this 4th day of May, 2017, the order of the Court of Common Pleas of Philadelphia County dated November 23, 2015, is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge