York Road Realty Co., L.P.,        :
               Appellant    :
                         :
        v.             :
                         :
                         :   No. 1513 C.D. 2015
Cheltenham Township         :   Argued: February 9, 2016

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: March 2, 2016

York Road Realty Co., L.P. (York Road) appeals from the Montgomery County Common Pleas Court's (trial court) July 17, 2015 order sustaining Cheltenham Township's (Township) preliminary objections and dismissing York Road's complaint and petition for appointment of board of viewers (Complaint/Petition).  The issues before this Court are whether the trial court erred by: (1) ruling, without conducting an evidentiary hearing, that York Road did not make out a *prima facie* case of a *de facto* taking because York Road does not have a compensable property interest and, (2) holding that removal of the footbridge over Tookany Creek (Footbridge) did not impact the public's access to York Road's business.  After review, we affirm.

Since 2002, York Road has owned and operated the York Road Ice Skating Rink (Rink) located at 8116 Old York Road in the Township (Property).  The Property is located off Bosler Road, behind a medical office.  In order to gain access

to the Property and its limited parking spaces, vehicles must turn off Bosler Road, and pass through the medical office parking lot.

Wall Park is a Township park located adjacent to the medical office, separated by Tookany Creek. Wall Park has a Township-owned public parking lot. According to York Road's Complaint/Petition, since before 1978, when a sewer line was installed over Tookany Creek and covered by the Footbridge, Rink patrons would park in the Wall Park lot, cross over the Footbridge and walk through the medical office property (8118 Old York Road) in order to access the Property. PECO has a deeded easement through the medical office's property; York Road does not. Although the medical office owner did not prohibit Rink patrons from walking across its property to reach the Rink, parking by Rink patrons in the medical office lot has been prohibited.

After Hurricane Irene in August 2011 and Tropical Storm Lee in September 2011 damaged the sewer line to the point that it was spewing raw sewage into Tookany Creek, and the Footbridge was "blown away," the Township repaired the sewer line but did not replace the Footbridge. Reproduced Record (R.R.) at 122a. Thereafter, "patrons, users and guests were obliged to attempt limited access to the Property and the Rink through [the medical office property], by way of an access easement[.]" R.R. at 56a-57a (Complaint/Petition ¶ 25). Lack of direct Footbridge access to the Property purportedly caused York Road lost business and revenue. *See* R.R. at 57a.

On September 8, 2014, York Road filed a writ of summons against the Township and conducted pre-pleading discovery, including interrogatories and requests for production of documents. *See* R.R. at 6a-49a. On November 20, 2014, York Road filed its Complaint in which it claimed that the Township owned the Footbridge and demanded damages on the basis that the Township's failure to repair or replace the Footbridge was a *de facto* taking/inverse condemnation under Section

2

714 of the Eminent Domain Code (Code),[1] 26 Pa.C.S. § 714 (Count I). York Road's pleading also contained its Petition in accordance with Section 502 of the Code, 26 Pa.C.S. § 502 (Count II). *See* R.R. at 52a-89a.

The Township filed preliminary objections to York Road's Complaint/Petition, wherein, the Township contended that York Road failed to allege facts sufficient to impose a legal duty upon the Township to rebuild the Footbridge or to compensate York Road for its loss, and that ingress and egress to the Rink at all times remained open through public roads. In the alternative, the Township argued that the circumstances in this case do not involve exceptional circumstances that interfered with York Road's use and enjoyment of the Property so as to inflict compensable injury. *See* R.R. at 90a-96a, 130a-151a. York Road responded to the Township's preliminary objections. *See* R.R. at 97a-128a, 158a-171a. The trial court heard argument on June 19, 2015. *See* R.R. at 212a-254a. The trial court sustained the Township's preliminary objections and dismissed York Road's Complaint/Petition. *See* R.R. at 183a. On August 7, 2015, York Road appealed to this Court.[2]

Initially, "we have held that the [Code] provides the *exclusive* method and practice governing eminent domain proceedings, including *de facto* takings, and that preliminary objections are the exclusive method of raising objections to a petition for appointment of viewers alleging a *de facto* taking[.]" *Gerg v. Twp. of Fox*, 107 A.3d 849, 852 (Pa. Cmwlth. 2015) (citation omitted). Specifically, Section 502(c)(1)

---

[1] 26 Pa.C.S. §§ 101–1106.

[2] "Our review of a trial court's ruling on preliminary objections to a petition for appointment of a board of viewers is limited to determining whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence." *In re Condemnation by the Dep't of Transp.*, 76 A.3d 101, 106 n.7 (Pa. Cmwlth. 2013).

The trial court issued its opinion on October 9, 2015.

of the Code authorizes the "owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking[, to] file a petition for the appointment of viewers . . . setting forth the factual basis of the petition." 26 Pa.C.S. § 502(c)(1). Section 504(d) of the Code provides, in relevant part:

> (1) Any objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the appointment of viewers.
>
> . . . .
>
> (5) If an issue of fact is raised, the court shall conduct an evidentiary hearing or order that evidence be taken by deposition or otherwise, but in no event shall evidence be taken by the viewers on this issue.

26 Pa.C.S. § 504(d). Accordingly, this Court has concluded that "preliminary objections in the context of proceedings under the Code are distinct from preliminary objections in the context of a proceeding under the Pennsylvania Rules of Civil Procedure." *William Schenk & Sons v. Northampton, Bucks Cnty., Mun. Auth.*, 97 A.3d 820, 824 (Pa. Cmwlth. 2014). "In proceedings under the Code, preliminary objections are intended as a procedure to resolve all legal and factual challenges to a declaration of taking before proceeding to the damages issue—*i.e.,* hearing by an appointed board of viewers." *Id.*.

> The law is well-settled:
>
> In order to prove a *de facto* taking, the property owner must establish exceptional circumstances that substantially deprived him of the beneficial use and enjoyment of his property. **This deprivation must be caused by the actions of an entity with eminent domain powers. Also, the damages sustained must be an immediate, necessary and unavoidable consequence of the exercise on the entity's eminent domain powers.**[3] **A *de facto* taking is** not a

---

[3] This Court has held:

physical seizure of property; rather, it is **an interference with one of the rights of ownership** that substantially deprives the owner of the beneficial use of his property. The beneficial use of the property includes not only its present use, but all potential uses, including its highest and best use.

*In re Borough of Blakely*, 25 A.3d 458, 463-64 (Pa. Cmwlth. 2011) (citations omitted; emphasis added). "Property owners alleging a *de facto* taking bear a heavy burden of proof. . . . Further, there is no bright line test to determine when a government action results in a *de facto* taking; each case turns on its own facts." *Id.* at 465.

York Road in its Complaint/Petition also alleged a claim under Section 714 of the Code, which states: "All condemnors . . . shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access or injury to surface support, whether or not any property is taken." 26 Pa.C.S. § 714. This Court has "recognize[d] the issue of consequential damages to property due to work by a

---

The decision of whether a compensable taking has occurred **requires an initial determination that the act complained of was, in fact, an exercise of eminent domain power**. Acts not done in the exercise of the right of eminent domain and not the immediate, necessary or unavoidable consequences of such exercise cannot be the basis of a proceeding in eminent domain.

*German v. City of Phila.*, 683 A.2d 323, 326-27 (Pa. Cmwlth. 1996) (emphasis added).

Eminent domain is the power to take property for public use and compensation must be paid for property that is taken, injured or destroyed. Police power, on the other hand, is the inherent power of the government to enact and enforce laws for the promotion of health, safety, and general welfare. The difference lies in the nature of the action at issue. Did the government enact or enforce a law or rule, or otherwise 'control' the use of property for the health, safety or welfare of the public? Or did it take property for the public's benefit?

*Ristvey v. Dep't of Transp.*, 52 A.3d 425, 429 (Pa. Cmwlth. 2012) (citations omitted).

municipality on its own abutting property. When access to property is interfered with, it creates a right to compensation by the land owner from the government." *Borough of Walnutport v. Dennis*, 13 A.3d 541, 550 (Pa. Cmwlth. 2010). A consequential damage claim under Section 714 of the Code is separate and distinct from a claim for a *de facto* taking under Section 502(c)(1) of the Code.[4] *Colombari v. Port Auth. of Allegheny Cnty.*, 951 A.2d 409 (Pa. Cmwlth. 2008).[5]

York Road first argues that the trial court erred by ruling, without conducting an evidentiary hearing, that York Road did not make out a *prima facie* case of a *de facto* taking because York Road does not have a compensable property interest. Specifically, York Road contends that it pled sufficient facts to merit an evidentiary hearing on whether a *de facto* taking occurred, since it alleged in the Complaint/Petition that York Road suffered a substantial deprivation of its property by the Township, an entity vested with eminent domain power, when it eliminated

---

[4] In the Township's brief in support of its preliminary objections and in its brief to this Court, the Township argues that Count I of York Road's pleading is invalid on its face and, thus, properly dismissed because the exclusive method of alleging a *de facto* taking is by a petition for appointment of viewers. However, the trial court did not state that York Road's claim under Section 714 of the Code was invalid, either because of a lack of evidence or because it was procedurally in error. Moreover, the Eminent Domain Code represents the exclusive procedure for challenging condemnations. 26 Pa.C.S. § 102(a). Both of York Road's claims were brought pursuant to the Code as required. In addition, Count I represents a distinct damage claim under the Code. Finally, Count II of York Road's pleading incorporated Count I's *de facto* taking claims into the petition for appointment of viewers. *See* R.R. at 60a-61a (¶ 49). Under the circumstances, we disagree that Count I of York Road's pleading is invalid on its face.

[5] We acknowledge that *Colombari* was decided pursuant to Sections 502(e) and 612 of the former Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, *formerly* 26 P.S. §§ 1-101 – 1-903, repealed by Section 5 of the Act of May 4, 2006, P.L. 112 (effective September 1, 2006). However, like Section 502(c)(1) of the Code, former Section 502(e) (24 P.S. § 1–502(e)) allowed for a condemnee who has suffered a compensable injury where no declaration of taking has been made to file for an appointment of viewers in seeking compensation for the injury. And, like Section 714, former Section 612 (26 P.S. § 1-612), authorized damages caused by abutting grading improvements. Accordingly, *Colombari's* conclusion is equally relevant here.

York Road's "sole reliable means of accessing the Property" and caused York Road immediate, unnecessary and avoidable damages. York Road Br. at 16; *see also* York Road Br. at 15-17. York Road also claimed that the multiple disputed factual issues require an evidentiary hearing.

In *Linde Enterprises, Inc. v. Lackawanna River Basin Sewer Authority*, 911 A.2d 658 (Pa. Cmwlth. 2006), this Court held that when reviewing preliminary objections to a petition for the appointment of viewers,

> [t]he trial court must determine whether, as a matter of law, the **averments** of the petition for the appointment of viewers, **taken as true**, **in addition to any stipulated facts, are sufficient to state a cause of action for a** *de facto* **taking**. If not, the preliminary objections must be sustained and the petition dismissed or allowed to be amended. **If the averments, taken as true,** *might* **establish a** *de facto* **taking, the trial court must take evidence by depositions, or otherwise,** *so that a judicial determination might be made*.

*Id.* at 661 (quoting *Hill v. City of Bethlehem*, 909 A.2d 439, 443 (Pa. Cmwlth. 2006)) (bold emphasis added).

Here, York Road averred in its Complaint/Petition that the Township owned the Footbridge. *See* R.R. at 55a (¶¶ 12, 14-15). York Road specifically stated in its Complaint/Petition that the Footbridge was "the primary means of access" from the Wall Park parking lot to the Property.[6] R.R. at 54a (¶ 10). York Road described in the Complaint/Petition that, due to the 2011 storms, "the Footbridge was destroyed and was no longer available to be used." R.R. at 56a (¶ 19); *see also* R.R. at 55a-56a (¶¶ 17-18). York Road alleged that after the Footbridge was destroyed, patrons "were obliged to attempt limited access . . . through adjoining properties, by way of an

---

[6] York Road also set forth in its Complaint/Petition that its 2003 zoning requests to gain alternative parking for its patrons on PECO's adjacent property had been denied. *See* R.R. at 55a (¶ 16).

7

access easement through those properties. There were no parking agreements or arrangements with the properties for those patrons, users and guest[s]." R.R. at 56a-57a (¶ 25); *see also* R.R. at 56a (¶ 24). York Road also averred that it has no egress, ingress or access to its parking on or through public roads.[7] *See* R.R. at 101a.

York Road's Complaint/Petition specifically addressed the elements necessary to set forth a *de facto* taking claim. York Road asserted that the Township has the requisite condemnation power, and it did have the damaged pipe and Footbridge removed. *See* R.R. at 58a (¶¶ 33, 34). York Road also alleged in its Complaint/Petition that the Township's failure to repair or replace the Footbridge and its refusal to allow York Road to do so constituted exceptional circumstances. *See* R.R. at 58a (¶¶ 33, 35). Finally, York Road declared that its damage was the immediate, necessary and unavoidable consequence of the Township's exercise of its eminent domain powers. *See* R.R. at 58a (¶¶ 33, 36, 39).

Based on the parties' pleadings, the trial court concluded:

> As a matter of law, no *de facto* taking occurred under the facts alleged. 'It is axiomatic . . . that in order to assert the rights of a condemnee, the party must be an owner of a property interest taken.' *In re Condemnation by Commonwealth of Pennsylvania, Dep't of Transp., of Two*

---

[7] The Township averred in its preliminary objections: "Egress and ingress to [the] Property has not been altered by the destruction of the [Footbridge]; egress and ingress to [the] Property has been open at all times material hereto through public roads." R.R. at 96a (Township's Prelim. Obj. ¶ 28). York Road responded:

> Denied for the reasons more fully set forth in [the Complaint/Petition] which is incorporated by reference as fully as though set forth herein at length. It is specifically denied that there is any egress, ingress or access to parking [at York Road's] Property on or through public roads. Strict proof of this allegation is demanded.

R.R. at 101a (York Road Ans. to Prelim. Obj. ¶ 28). However, whether the Property has access by a public roadway is not before us; thus, we do not address that matter.

*(2) Billboards Located on T.R. 209 etc.*, 452 A.2d 81, 83 (Pa. Cmwlth. 1982). The property interest alleged to have been taken in this case is access to the public parking lot in Wall Park. The [F]ootbridge was not located on [the P]roperty, and it did not abut [the] Property. [York Road] has no property interest in the parking lot on the opposite side of Tookany Creek. Access to the Property has remained open following the removal of the [Foot]bridge. (Compl. ¶ 25).

Thus, since [York Road]'s patrons cannot use the public parking lot in Wall Park, the status quo has changed, but no enforceable property right belonging to [York Road] has been affected. At best, York Road [] was the beneficiary of gratuitous parking in the Wall Park parking lot as a matter of custom. . . .

The inability to use the municipal parking lot and access the skating rink may have resulted in a financial loss to [York Road]. However, such is not grounds for an eminent domain action. *Commonwealth, Dep't of Transp. v. Kemp*, 515 A.2d 68, 73 (Pa. Cmwlth. 1986) ('[I]t should be remembered that the property owner's burden of proof in a *de facto* condemnation case is a heavy one. [While] depreciation and lack of marketability are compensable injuries to the property which may be recovered as damages . . . they do not themselves substantially deprive the property owner of the use of her property, and thus cannot support the finding of a *de facto* taking.').

Accordingly, because [York Road] alleges no plausible Property right in the Township parking lot that was interfered with by the change in regard to access to the Property, no *de facto* taking took place in this case as a matter of law.

Trial Ct. Op. at 4-5.[8]

We agree with the trial court that no evidentiary hearing was necessary in order to assess whether on the face of the Complaint/Petition York Road stated a viable *de facto* taking claim. *See Linde Enters., Inc.* York Road contends that the

---

[8] The trial court did not address York Road's claim under Section 714 of the Code.

9

multiple disputed factual issues requiring an evidentiary hearing include: (1) whether the Township owned the Footbridge; (2) whether the Property abutted the Footbridge; (3) whether York Road has an easement over the neighboring landowner's property; (4) whether there are reasonable, alternate means of ingress and egress available to Rink patrons; and, (5) the economic impact of the Footbridge's demolition. *See* York Road Br. at 17-18. However, in deciding the preliminary objections, we must first accept as true the representations in York Road's Complaint/Petition that the Township owned the Footbridge (*see* ¶ 12), that the Property abuts the medical office property and the medical office property directly abuts the Footbridge (*see* ¶ 25) (at oral argument York Road's counsel confirmed that the Footbridge extends from Wall Park over the creek to the medical office property, and that the Footbridge does not abut the Property), and that it holds an access easement over the medical office's property by which the public may still access the Property (*see* ¶ 25). Thus, what York Road now claims are disputed facts, are not.

Moreover, if the Township owned the Footbridge, as alleged by York Road, York Road had no property interest in the Footbridge itself. It is also clear that since the Township owned the Wall Park parking lot, York Road had no actionable interest in the parking lot. York Road argues that the Township's decision not to repair, replace and/or renovate its Footbridge, and the Township's refusal to allow York Road to do so, "imping[ed] upon [York Road's] beneficial use of its Property," R.R. at 57a (¶ 32), because it was no longer feasible for patrons to gain access to the Property and the Rink from the Wall Park parking lot.[9] *See* R.R. at 56a, 58a (¶¶ 24, 36).

We acknowledge that "every property owner retains the right of access from a public roadway, and that this right includes the right to reasonable ingress and

---

[9] In its brief, York Road expressed that it has an interest in "the right of access [to the public parking] via the [Footb]ridge." York Road Br. at 20.

10

egress[.]" *McElwee v. Se. Pa. Transp. Auth.*, 948 A.2d 762, 775-76 (Pa. 2008) (citation omitted). We further agree that "the right of access is a constitutionally[-]protected property interest, incidental to ownership or occupancy of the land, and may be denied only under compelling circumstances." *Sienkiewicz v. Dep't of Transp.*, 883 A.2d 494, 502 (Pa. 2005). However, what these and other cases require is access to public roads and no more.

On the face of the Complaint/Petition, it appears that York Road has always had access to the Rink by Bosler Road, a public roadway. York Road alleged in its Complaint/Petition that the Footbridge was the primary, but not the only, means of access to the Rink. Whether or not the Footbridge afforded York Road's patrons the convenience of a shorter walk until 2011 does not change the fact that York Road's patrons have always been permitted to and may continue to park in the public Wall Street parking lot, walk to Bosler Road, and pass through the medical office's property to get to the Rink. That the route to the Rink from the Wall Park lot is now more circuitous is not a basis upon which York Road can recover under the Code. The Pennsylvania Supreme Court has declared that a property owner does not have a compensable interest in any particular traffic pattern. *Sienkiewicz*; *see also Commonwealth v. Hession*, 242 A.2d 432 (Pa. 1968). York Road has not cited, and this Court has not found, any case that would analyze pedestrian traffic any differently.

Further, although not addressed by the trial court, we hold that York Road's Complaint/Petition fails to state a claim under Section 714 of the Code for which it may recover from the Township. First, York Road did not assert that any damages to its purported property interest "result[ed] from change of grade of a road or highway[.]" 26 Pa.C.S. § 714. Second, according to York Road's allegations set forth in its Complaint/Petition, access to the Rink must always be gained through the medical office's property, which is the property that physically abuts Bosler Road

11

and previously abutted the Footbridge. Section 714 of the Code and our case law allow for damages only where the property abuts the area of improvement. Accordingly, York Road's claim fails because the Township did not affect a road or highway and York Road does not own "property abutting the area of an improvement[.]" *Id.*

Because, on the face of the Complaint/Petition, York Road has failed to state a valid *de facto* taking claim, the trial court did not err by ruling, without conducting an evidentiary hearing, that York Road did not have a compensable property interest. Based on the foregoing, the trial court's order sustaining the Township's preliminary objections and dismissing York Road's Complaint/Petition is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

York Road Realty Co., L.P.,       :
                Appellant     :
                           :
          v.              :
                           :
                           :    No. 1513 C.D. 2015
Cheltenham Township        :

## O R D E R

AND NOW, this 2nd day of March, 2016, the Montgomery County Common Pleas Court's July 17, 2015 order is affirmed.

 

_____
ANNE E. COVEY, Judge