IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chernomusa N-Jie                        :

                                      :

       v.                     :      No. 719 C.D. 2022

                                        :      Argued: May 8, 2023

Commonwealth of Pennsylvania,  :

Department of Transportation,     :

                  Appellant   :


BEFORE:   HONORABLE ANNE E. COVEY Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT              FILED: August 7, 2023

      The Commonwealth of Pennsylvania, Department of Transportation (PennDOT or Department) appeals an order of the Court of Common Pleas of Allegheny County (trial court) that overruled its preliminary objections to the petition of Chernomusa N-Jie (Landowner) for the appointment of a board of viewers. Landowner's petition asserted that PennDOT's removal of his pedestrian bridge, which was the only means of access to his property, effected a *de facto* condemnation. We affirm the trial court.

## Background

      In 2012, Landowner purchased property at 320 Lime Hollow Road, or State Route 2064, in the Township of Penn Hills (Property). The Property is separated from Lime Hollow Road by a 7-foot-deep streambed. The sole means of access to the Property was from Lime Hollow Road by a pedestrian bridge over the streambed adjacent to the road. There was a break in the guardrail on Lime Hollow Road to permit access to the pedestrian bridge.

In July of 2019, storms caused landslides, damaging the embankments along Lime Hollow Road. PennDOT undertook repair work, which initially did not involve the embankment adjacent to the Property. In early 2020, when the work began, PennDOT discovered that a retaining wall along Lime Hollow Road required replacement. This included that part of the wall supporting the pedestrian bridge to Landowner's Property.

On May 21, 2020, PennDOT sent a letter to the record owner of the Property, which stated:

> [Y]our pedestrian bridge is encroaching upon the Department's right-of-way on State Route 2064 (320 Lime Hollow Road) in the Municipality of Penn Hills, Allegheny County.
>
> This unsafe pedestrian bridge is interfering with planned repairs to Lime Hollow Road and has been constructed on a Department owned wall that is currently failing and whose repair is part of the project. Additionally, as part of the Department of Transportation's responsibility for the safety of the motoring public, the Department must ensure that the Right-of-Way Areas of the State's Roadways remain free of objects which would present potential safety hazards.
>
> Please see the attached plan and photos.
>
> We are requesting that you immediately remove this encroachment from the Department Right-of-Way, so that it will not interfere with the current highway project, highway safety, and that you can retain possession of the materials involved. *If the pedestrian bridge is not removed in 14 calendar days from the receipt of this letter, the Department's contractor will remove it and place the materials on your Property.*
>
> To give you a better understanding of the problems related to encroachments, we have enclosed a brochure entitled, "Right-of-Way Encroachments and Outdoor Advertising Sign Control." Should you have any questions concerning this notice, please contact District Property Manager. . . .

2

Reproduced Record at 389a (R.R.____) (emphasis added). Shortly after expiration of the 14-day deadline, PennDOT's contractor removed the bridge, cut it into pieces and hauled the materials away. It then installed a new guardrail along Lime Hollow Road, where the entrance to the pedestrian bridge had been located.

On July 30, 2021, Landowner filed a petition for appointment of a board of viewers pursuant to Section 502(c) of the Eminent Domain Code,[1] 26 Pa. C.S. §502(c), alleging that PennDOT's removal of the pedestrian bridge "denied the beneficial use and enjoyment of his property" and, thus, constituted a *de facto* taking of the Property. R.R. 5a-6a.

In response, PennDOT filed preliminary objections pursuant to Section 504(d) of the Eminent Domain Code, 26 Pa. C.S. §504(d). PennDOT asserted that the pedestrian bridge was an unpermitted encroachment upon the highway right-of-way, which had to be removed in order to repair the road's retaining wall. PennDOT

---

[1] Section 502(c) provides:

> (c) Condemnation where no declaration of taking has been filed.—
>
> > (1) An owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) setting forth the factual basis of the petition.
> >
> > (2) The court shall determine whether a condemnation has occurred, and, if the court determines that a condemnation has occurred, the court shall determine the condemnation date and the extent and nature of any property interest condemned.
> >
> > (3) The court shall enter an order specifying any property interest which has been condemned and the date of the condemnation.
> >
> > (4) A copy of the order and any modification shall be filed by the condemnor in the office of the recorder of deeds of the county in which the property is located and shall be indexed in the deed indices showing the condemnee as grantor and the condemnor as grantee.

26 Pa. C.S. §502(c).

alleged that the unpermitted bridge also "encroaches on an adjacent property belonging to Susan Lynn Kelley," whose home is located on the opposite side of Lime Hollow Road. Kelley informed PennDOT that "she did not own, construct, permit, or otherwise utilize the subject pedestrian bridge." R.R. 13a. Finally, PennDOT asserted that Landowner may apply for a highway occupancy permit, which "will allow him to construct a bridge and utilize a portion of the highway right-of-way to access his property." R.R. 15a.

In his deposition, Landowner testified that he is an auto mechanic and sells auto parts. He purchased the Property "with the bridge" in 2012 for $8,000 and uses it as storage for his auto business. Notes of Testimony (N.T.), 2/25/2022, at 42; R.R. 97a. When he needs to access his Property, he parks across the street, with the permission of Kelley.

Landowner testified that he learned of PennDOT's May 21, 2020, letter from the record owner of the Property, who was still the prior owner because Landowner did not record the Property deed until July of 2020. Landowner explained that it was impossible to remove the bridge in 14 days. Nevertheless, Landowner believed at the time that he could reinstall the bridge afterwards if the bridge materials were placed on the Property, as stated in PennDOT's letter. N.T., 2/25/2022, at 16; R.R. 71a. However, the contractors cut the bridge into pieces and hauled them away, terminating his access to the Property, where he keeps his tools and auto parts. Landowner testified that to access the Property, he has to use a ladder to climb in and out of the streambed at times when the water level is low. His neighbors' bridges across the streambed have not been removed despite PennDOT's repair work on Lime Hollow Road.

4

PennDOT's assistant construction engineer, Steven Sneddon, who oversaw the repair project on Lime Hollow Road, testified by deposition. He explained that the retaining wall below Landowner's pedestrian bridge was "significantly deteriorated" and could not be safely replaced without removing the bridge. N.T., 2/14/2022, at 21; R.R. 272a. Further, removing the bridge in one piece would have been "very difficult and risky" given the "poor condition" of the bridge and the lack of information on the age and construction of the bridge. N.T., 2/14/2022, at 42-43; R.R. 293a-94a. Without knowing how the bridge was connected to the existing retaining wall, PennDOT could not support the bridge temporarily.

PennDOT's right-of-way administrator, Jeffrey Powell, testified by deposition that he researched the historic right-of-way for Lime Hollow Road. The Commonwealth acquired the road from Penn Hills Township sometime after the enactment of the Act of June 22, 1931, P.L. 594, No. 203,[2] which authorized the acquisition. Powell testified that the bridge was located on three properties: a portion sat within PennDOT's right-of-way; a portion sat within Landowner's Property; and a portion was located on property owned by Kelley. N.T., 2/14/2022, at 23-24; R.R. 222a-23a.

PennDOT's highway occupancy permit manager, Michael Simmons, testified by deposition that he was unable to locate any permit allowing Landowner or previous owners of the Property access to the state highway. He explained that Landowner was eligible to apply for a highway occupancy permit for a new pedestrian bridge to the Property from Lime Hollow Road.

---

[2] Act of June 22, 1931, is referred to as the Township State Highway Law.

**Trial Court Decision**

By order dated June 27, 2022, the trial court overruled PennDOT's preliminary objections and granted Landowner's petition for appointment of a board of viewers. The trial court found that Landowner's "interest in the pedestrian bridge from Lime Hollow Road or State Route 2064 to 320 Lime Hollow Road and the supporting pillars have been condemned," and the condemnation "occurred during the summer of 2020."[3] Trial Court Order, 6/27/2022. PennDOT appealed to this Court.

In its PA. R.A.P. 1925(a) opinion, the trial court explained that PennDOT has police powers over structures located within its right-of-way; however, in this case, PennDOT did not reasonably exercise its police powers. It was "patently unreasonable" for PennDOT to allow only 14 days for the bridge's removal, in light of the fact that 10 months had already passed since the damage to the right-of-way. Trial Court Rule 1925(a) Op. at 4. PennDOT also acted unreasonably by not removing the bridge in one piece and placing it on Landowner's property.

The trial court reasoned that the pedestrian bridge may have been authorized by Landowner's right-of-access to a well located on Kelley's property or as part of a prescriptive easement to prevent a landlocking of the Property. PennDOT knew the bridge was the only access to the Property, and it "clearly had been used more than long enough to constitute part of the prescriptive easement." Trial Court Rule 1925(a) Op. at 5. By removing the bridge, PennDOT landlocked Landowner. This unreasonable exercise of PennDOT's police powers constituted a

---

[3] Landowner's petition asserted that the Property was condemned; however, the trial court found that only the bridge was condemned. Landowner did not appeal the trial court's decision on the scope of the *de facto* taking.

6

*de facto* taking. *Id.* (citing *McElwee v. Southeastern Pennsylvania Transportation Authority*, 948 A.2d 762 (Pa. 2008)).

Finally, the trial court explained that its order complied with Section 502(c) of the Eminent Domain Code, 26 Pa. C.S. §502(c), because the order specified the date of the condemnation as "the summer of 2020" as well as the nature and extent of the property interest that was condemned, *i.e.*, the pedestrian bridge. Trial Court Rule 1925(a) Op. at 6. The trial court concluded that these findings were sufficient to allow a board of viewers to make an appropriate award of compensation.

## Appeal

On appeal,[4] PennDOT raises two issues for our review. First, PennDOT argues that the trial court erred in concluding that PennDOT's removal of an unpermitted encroachment on its right-of-way constituted a *de facto* condemnation of the subject property. Second, in the alternative, PennDOT argues that the trial court erred by not determining the precise date of the condemnation and the extent and nature of the property interest condemned, which are required by Section 502(c) of the Eminent Domain Code.

## I. *De Facto* Taking

In its first issue, PennDOT argues that the trial court erred in concluding that the removal of the pedestrian bridge from its right-of-way constituted a *de facto* taking. Section 420 of the State Highway Law[5] authorizes PennDOT to issue

---

[4] This Court's standard of review of a trial court's ruling on preliminary objections to a petition for appointment of a board of viewers is to determine whether there is substantial evidence in the record to support the necessary findings and whether the trial court committed an error of law. *See Ristvey v. Department of Transportation*, 52 A.3d 425, 429 n.3 (Pa. Cmwlth. 2012).

[5] Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §670-420. It provides, in pertinent part, that "[t]he secretary may issue permits for the opening of streets and driveways onto State highways and for the opening of the surface and occupancy of State highways on terms and conditions established in department regulations," and "[n]o person, municipality or municipality authority

permits to regulate driveways that connect to state highways. While the age of the pedestrian bridge is unknown, PennDOT's authority to regulate encroachment on state highways may be applied retroactively. PennDOT Brief at 19 (citing *Department of Transportation v. Longo*, 510 A.2d 832 (Pa. Cmwlth. 1986)). PennDOT may also require any person to remove an encroachment "from the legal limits of the right-of-way and to restore the right-of-way to its former condition." 67 Pa. Code §441.6(4)(ii). PennDOT asserts that its removal of the pedestrian bridge was reasonable because emergency repair work was needed on the retaining wall supporting the bridge. Notwithstanding its removal of the pedestrian bridge, PennDOT asserts it has not interfered with Landowner's access to the Property because he is free to apply for a highway occupancy permit and construct a new bridge.

To support its position that there has not been a condemnation, PennDOT directs the Court to *In re Condemnation by Commonwealth of Pennsylvania Department of Transportation of Two Billboards Located on T.R. 209*, 452 A.2d 83 (Pa. Cmwlth. 1982) (*Condemnation of Two Billboards*). In that case, this Court held that PennDOT's removal of unpermitted billboards did not constitute the exercise of its eminent domain power but, rather, its police powers. At issue were eight billboards that required a permit under Section 7 of the Outdoor Advertising Control Act of 1971 (Outdoor Advertising Act).[6] The owner obtained permits for four of the eight billboards. PennDOT initiated an enforcement action against the four unpermitted billboards, which it then removed under authority of

---

shall open a driveway onto a State highway or open the surface of or occupy a State highway without a permit." 36 P.S. §670-420(b).

[6] Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §2718.107.

8

Section 10 of the Outdoor Advertising Act.[7]  This Court held that because PennDOT's action was undertaken to enforce the Outdoor Advertising Act, it was not a condemnation subject to the Eminent Domain Code.

PennDOT acknowledges that there are limits to the exercise of its police power.  In *Ristvey v. Department of Transportation*, 52 A.3d 425 (Pa. Cmwlth. 2012), PennDOT issued a highway occupancy permit for a left turn, stand-by lane on a state highway to enter a development.  An adjacent landowner petitioned for appointment of a board of viewers, alleging a *de facto* taking by PennDOT because the change of traffic pattern on the highway rendered his property worthless.  This Court held that PennDOT's issuance of the highway occupancy permit constituted a reasonable exercise of its police powers, necessary to avoid a potentially hazardous highway condition, and not a condemnation.  Further, the reconfiguration of the road did not unreasonably interfere with the adjacent owner's access to and from his property.

---

[7] It stated as follows:

> In addition to the penalties prescribed in this act, *the secretary may institute any appropriate action or proceeding after thirty days' written notice of a violation* to the person or persons maintaining or allowing to be maintained such device, to prevent, restrain, correct or abate a violation or to cause the removal of any advertising device erected or maintained in violation of the provisions of this act, or the secretary may have any such device corrected or removed by his employes. In the event of such removal, the person or persons responsible for the erection or maintenance of such device and the person or persons allowing such device to be maintained shall be liable to the department for the cost of removal or correction of such device.  Neither the secretary nor any other employe acting at his direction shall be liable in any criminal or civil action for damages for any action authorized by this act.

36 P.S. §2718.110 (emphasis added).  Section 10 was amended by the Act of July 11, 2022, P.L. 1581, to exempt certain billboards.  However, the salient terms cited above remain in Section 10 of the Outdoor Advertising Act as amended in 2022.

Landowner responds that PennDOT's exercise of its police powers was unreasonable. PennDOT demolished the bridge and then installed a new guardrail in the location of the bridge entrance, leaving Landowner without access to his Property. Landowner argues that in the exercise of its police powers, PennDOT is required to choose the minimum course, but it did not do so in Landowner's case. Further, Landowner's unpermitted encroachment was no different than that of his neighbors, but their bridges have not been removed. PennDOT told Landowner that the materials of the bridge would be placed on his property, but that did not happen. PennDOT's destruction of the bridge violated Landowner's due process rights.

To prove a *de facto* taking, the property owner must establish "exceptional circumstances that substantially deprived him of the beneficial use and enjoyment of his property." *York Road Realty Co., L.P. v. Cheltenham Township*, 136 A.3d 1047, 1050 (Pa. Cmwlth. 2016) (citing *In re Borough of Blakely*, 25 A.3d 458, 463-64 (Pa. Cmwlth. 2011)). This deprivation "must be caused by the actions of an entity with eminent domain powers," and the damages sustained must be "an immediate, necessary and unavoidable consequence of the exercise on the entity's eminent domain powers." *York Road Realty*, 136 A.3d at 1050. A *de facto* taking "is not a physical seizure of property; rather, it is an interference with one of the rights of ownership that substantially deprives the owner of the beneficial use of his property. The beneficial use of the property includes not only its present use, but all potential uses, including its highest and best use." *Id.* at 1050-51.

There is an important difference between the exercise of police powers and the exercise of eminent domain powers. We have explained that difference as follows:

> Police power should not be confused with that of eminent domain. *Police power controls the use of property by the owner,*

*for the public good, its use otherwise being harmful*, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, *while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property. . . .*

No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination of the right of its reasonable regulation by the government clearly necessary to preserve the health, safety, or morals of the people. *Obedience to such regulation is not taking property without due process; that clause does not qualify the police power.*

*Condemnation of Two Billboards*, 452 A.2d at 85 (emphasis added). Nevertheless, "the Commonwealth may not effect what amounts to a taking under the guise of its police power without paying compensation." *Ristvey*, 52 A.3d at 432. "A person's right to private ownership of his property is only subject and subordinate to *reasonable* regulation by the government for the preservation of public health, safety, and morals." *Id*. (emphasis in original). PennDOT may not "unduly intermeddle" with property rights of property owners. *Id*. "If it does, then an exercise of its police powers may, in certain circumstances, constitute a compensable taking."[8] *Id*.

Here, the trial court held that PennDOT's removal of the pedestrian bridge to access the retaining wall thereunder constituted an exercise of its police powers. The question, then, was whether PennDOT acted unreasonably, thereby effecting a compensable taking. *Ristvey*, 52 A.3d at 432.

---

[8] Property owners alleging a *de facto* taking "bear a heavy burden of proof . . . . Further, there is no bright line test to determine when a government action results in a de facto taking; each case turns on its own facts." *York Road Realty*, 136 A.3d at 1051.

11

The trial court relied upon the Supreme Court's decision in *McElwee*, 948 A.2d 762. There, the Southeastern Pennsylvania Transportation Authority (SEPTA) performed construction work along Market Street in Philadelphia and, for three years, routinely blocked access to McElwee's printing business, causing losses that led to its demise. McElwee asserted that SEPTA effected a *de facto* condemnation of his printing business. The evidence showed that SEPTA's construction work blocked the entrance to McElwee's driveway, which the business needed for loading and unloading raw materials and finished products.

The Supreme Court held that McElwee made a *prima facie* case that SEPTA had substantially deprived him of the beneficial use and enjoyment of the property. In doing so, the Supreme Court cited *Truck Terminal Realty Co. v. Department of Transportation*, 403 A.2d 986 (Pa. 1979), which established that temporary interference with road access falls under the noncompensable exercise of the police power necessary to effectuate public improvement, unless the alleged interference was accomplished in an arbitrary or unreasonable manner, *or became unduly prolonged*. *McElwee*, 948 A.2d at 778. The Supreme Court explained:

> Clearly, if the governmental entity arbitrarily obstructs access to the subject property in the sense that the interference is unnecessary and the project could have been completed just as conveniently without substantial harm to any property owner, the situation would come within the exception to the *Truck Terminal* rule for arbitrary deprivations. . . . Presently, however, although Appellees adduced a significant amount of evidence concerning the inconvenience and disruption they suffered in their business pursuits, little in the record suggests that alternate means were available to SEPTA or that the driveway was blocked for vindictive or otherwise arbitrary reasons. *Still, it is relevant that, under the disjunctive formulation utilized in Truck Terminal, the exception may also be triggered where the work is done in a way that is "unreasonable," or "unreasonably prolonged," even if it is not arbitrary.* Thus, for present purpose the issue distills to

12

whether the case adduced by Appellees demonstrates interference with access that was unreasonable under all of the circumstances.

Although the concept of an unreasonable interference with access cannot be delineated with precision, . . . *it seems evident that the longer the interference lasts, the lighter the burden the de facto condemnee must carry to establish unreasonableness*[.]

*McElwee*, 948 A.2d at 778-79 (emphasis added).

Here, PennDOT removed the pedestrian bridge in order to access and replace the damaged retaining wall along Lime Hollow Road. As in *McElwee*, the record here does not establish that alternate means were available to PennDOT to do this work. PennDOT's inference with Landowner's access to the Property, however, was unreasonable and prolonged. The bridge was Landowner's only access to the Property; he now has to use a ladder to climb in and out of the streambed to access the Property. Even that access is unreasonably blocked by the new guardrail. Landowner is landlocked until a new bridge is built.

PennDOT argues that the removal of any encroachment within its right-of-way constitutes a reasonable exercise of its police power, and nothing precludes Landowner from applying for a highway occupancy permit and constructing a new bridge. However, as observed by Landowner, PennDOT's May 21, 2020, letter to the owner of record of the Property did not mention a lack of the highway occupancy permit for the pedestrian bridge or any violation of Section 420 of the State Highway Law. The letter stated that "a Department[-]owned wall" underneath the bridge "is currently failing" and asked the owner to remove the "unsafe pedestrian bridge" so that "it will not interfere with the current highway project." R.R. 389a. The letter further advised that "[i]f the pedestrian bridge is not removed in 14 calendar days from the receipt of this letter, the Department's contractor will remove it and *place*

13

*the materials on your Property*." *Id*. (emphasis added). Landowner testified that he intended to put the bridge back in place, using those materials. N.T. 15-16; R.R. 70a-71a.

PennDOT further argues that its regulation at 67 Pa. Code §441.6(4)(ii) authorized it to require Landowner to remove his structures or property "from the legal limits of the right-of-way and to restore the right-of-way to its former condition." PennDOT Brief at 20. However, this regulation applies only where a highway occupancy permit has been issued. Section 441.6, titled "General Conditions," states, in relevant part, as follows:

> *The following conditions shall apply to permits issued under the provisions of this chapter*:
>
> \* \* \* \*
>
> (4) *Permittee responsibilities.* Permittee responsibilities shall be as follows:
>
>> (ii) *In the event of failure or neglect by the permittee to perform and comply with the permit or the provisions of this chapter*, *the Department may immediately revoke and annul the permit and order and direct the permittee to remove any or all structures, equipment, or property belonging to the permittee or its contractors from the legal limits of the right-of-way and to restore the right-of-way to its former condition*. In the event the Department determines that such structures, equipment, or property pose a threat to the public safety and the permittee fails to remove the same after notice from the Department to do so, the Secretary or his attorneys, or any attorney of any court of record shall be authorized to appear for the permittee, and to enter an amicable action of ejectment and confess judgment against the permittee; and the attorney shall be authorized to issue forthwith a writ of

14

> possession without leave of court, all at the cost of
> the permittee.

67 Pa. Code §441.6 (emphasis added).  Notably, the regulation requires process, which was not afforded to Landowner.

As PennDOT acknowledges, neither Landowner nor the previous owner of the Property had been issued a highway occupancy permit for the pedestrian bridge.  Consequently, the regulation at 67 Pa. Code §441.6 has no application to this circumstance.[9]

Section 420 of the State Highway Law provides that "no person, municipality or municipality authority shall open a driveway onto a State highway or open the surface of or occupy a State highway without a permit."  36 P.S. §670-420(b)(2).  It further states that

> [a]ny person violating any rule or regulation promulgated under this section, or who shall, by any method or device, or in any manner, wilfully or maliciously destroy, injure, or damage any such highway in this Commonwealth, *shall, upon summary conviction thereof, be sentenced to pay a fine of not less than one hundred dollars ($100.00) for each offense*, *together with the costs of prosecution and all necessary restoration*, which shall be recovered, as in similar cases, *upon complaint of any person*

---

[9] Likewise, the regulation at 67 Pa. Code §441.10, titled "Penalties and enforcement," did not authorize PennDOT to remove the pedestrian bridge.  It states, in pertinent part:

> (a) *General rule.* A violation of this chapter or the permit requirements shall constitute grounds for imposition of any or all of the following penalties:
>
> * * * *
>
> (4) *The Department may block driveways or sever, remove or block drainage facilities constructed without a permit or in violation of this chapter*.

67 Pa. Code §441.10(a)(4) (emphasis added).  The pedestrian bridge is not a "driveway" as defined in the regulations.  *See* 67 Pa. Code §441.1 (driveway is "[e]very entrance or exit used by vehicular traffic to or from properties abutting a highway.  The term includes proposed streets, lanes, alleys, courts, and ways").  PennDOT does not argue that the pedestrian bridge is a "drainage facility."

15

*before a magistrate or justice of the peace*, and the fine or fines so recovered shall be paid into the Motor License Fund.

36 P.S. §670-420(e) (emphasis added). The procedure prescribed in Section 420(e) was not followed in the instant case. Instead, PennDOT simply removed the pedestrian bridge and, in doing so, landlocked Landowner.

*Condemnation of Two Billboards*, 452 A.2d 83, and *Ristvey*, 52 A.3d 425, do not support PennDOT's preliminary objections.

In *Condemnation of Two Billboards*, PennDOT removed four unpermitted billboards that had violated Section 7 of the Outdoor Advertising Act, 36 P.S. §2718.107. Section 10(a) of the Outdoor Advertising Act authorized PennDOT to institute an "appropriate action or proceeding" after written notice of a violation "to prevent, restrain, correct or abate a violation or to cause the removal of any advertising device erected or maintained in violation of the provisions of this act[.]" 36 P.S. §2718.110(a). This Court held that PennDOT did not "take" the billboards for the benefit of the public; rather, it enforced the Outdoor Advertising Act. Here, by contrast, PennDOT destroyed the pedestrian bridge so it could replace the retaining wall within its right-of-way, not to enforce the State Highway Law. Even so, PennDOT did not follow the procedures for enforcement of the State Highway Law. *See* 36 P.S. §670-420(e).

In *Ristvey*, this Court held that a *de facto* taking had not occurred because the reconfiguration of the road did not unreasonably interfere with the owner's access to his property. Here, by contrast, PennDOT has directly interfered with Landowner's access to his property. PennDOT has left Landowner landlocked by removing his only access to the Property.

16

The trial court held that in its removal of the pedestrian bridge, the only access to Landowner's Property, PennDOT unreasonably exercised its police powers, thereby effecting a *de facto* taking. We discern no error in this holding.

## II. Date of the condemnation and extent and nature of the property condemned

PennDOT argues, in the alternative, that the matter should be remanded to the trial court to determine the precise date of the condemnation and the precise nature of the property interest condemned under Section 502(c) of the Eminent Domain Code, 26 Pa. C.S. §502(c). These findings must be reduced to a court order, which the condemnor must file in the office of the recorder of deeds showing the condemnee as the grantor and the condemnor as the grantee. Without the trial court's compliance with Section 502(c), PennDOT argues that the appointed board of viewers cannot assess damages. Landowner responds that the trial court's order is clear: it identified the property taken as the bridge and the support pillars, and the condemnation occurred in the summer of 2020.

Section 502(c)(1) of the Eminent Domain Code authorizes the "owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking[, to] file a petition for the appointment of viewers . . . setting forth the factual basis of the petition."[10] 26 Pa. C.S. §502(c)(1). Section 504(d) of the Eminent Domain Code provides, in relevant part, as follows:

---

[10] The Eminent Domain Code "provides the *exclusive* method and practice governing eminent domain proceedings, including *de facto* takings, and [] preliminary objections are the exclusive method of raising objections to a petition for appointment of viewers alleging a *de facto* taking[.]" *Gerg v. Township of Fox*, 107 A.3d 849, 852 (Pa. Cmwlth. 2015) (emphasis in original) (citation omitted).

(1) Any objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the appointment of viewers.

(2) Objections to the form of the petition or the appointment or the qualifications of the viewers in any proceeding or to the legal sufficiency or factual basis of a petition filed under section 502(c) (relating to petition for appointment of viewers) are waived unless included in preliminary objections.

\* \* \* \*

(5) *If an issue of fact is raised, the court shall conduct an evidentiary hearing or order that evidence be taken by deposition or otherwise, but in no event shall evidence be taken by the viewers on this issue*.

26 Pa. C.S. §504(d) (emphasis added).

This Court has concluded that "preliminary objections in the context of proceedings under the [Eminent Domain] Code are distinct from preliminary objections in the context of a proceeding under the Pennsylvania Rules of Civil Procedure." *William Schenk & Sons v. Northampton, Bucks County Municipal Authority*, 97 A.3d 820, 824 (Pa. Cmwlth. 2014). "In proceedings under the [Eminent Domain] Code, preliminary objections are intended as a procedure to resolve all legal and factual challenges to a declaration of taking before proceeding to the damages issue—i.e., hearing by an appointed board of viewers." *Id*. Section 502(c)(2) of the Eminent Domain Code further provides that "[t]he court shall determine whether a condemnation has occurred, and, if the court determines that a condemnation has occurred, the court shall determine the condemnation date and the extent and nature of any property interest condemned." 26 Pa. C.S. §502(c)(2).

"When the trial court renders findings prior to the appointment of a board of viewers, the findings are binding on that board, which will hear and decide the remaining damages issues." *In re De Facto Condemnation of Taking of Lands*

18

*of WBF Associates, L.P. ex rel. Lehigh–Northampton Airport Authority*, 903 A.2d 1192, 1208-09 (Pa. 2006). Nevertheless, the board of viewers has implicit authority to decide all relevant questions of law or fact necessary to an award of damages. *Gardner v. Allegheny County*, 142 A.2d 187, 192-93 (Pa. 1958).

Here, Landowner's petition alleged that PennDOT's removal of the pedestrian bridge deprived him of "the beneficial use and enjoyment of his property" and, thus, constituted a *de facto* taking of the entire Property. R.R. 5a-6a. The extent and nature of the property interest condemned was an issue of fact to be litigated. In the end, the trial court found that Landowner's "interest in the pedestrian bridge from Lime Hollow Road or State Route 2064 to 320 Lime Hollow Road and the supporting pillars have been condemned[.]" Trial Court Order, 6/27/2022. It did not conclude that the entire Property had been condemned.

The trial court further found the condemnation "occurred during the summer of 2020." Trial Court Order, 6/27/2022. While PennDOT stated in its preliminary objections that it "removed the unpermitted encroachment on July 20, 2020," R.R. 14a, the trial court found that the parties provided "no more precise date" on when the condemnation occurred, but they "likely can cure their error for the board of viewers proceedings." Trial Court Rule 1925(a) Op. at 6.

The trial court has made factual findings sufficient to allow the board of viewers to assess damages for the taking. In any case, the board of viewers can determine the exact date of the condemnation to the extent necessary to determine the damages award. The board of viewers has implicit authority to decide "all relevant questions of law or fact before it can competently award damages or assess [] benefits." *Gardner*, 142 A.2d at 193.

19

## Conclusion

Based upon the foregoing, we hold that the trial court did not err. PennDOT unreasonably exercised its police powers in removing the pedestrian bridge, the only access to Landowner's Property, which action constituted a *de facto* taking. Further, the trial court made the findings needed in order for the board of viewers to determine damages. Accordingly, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chernomusa N-Jie           :
                                :
        v.             :      No. 719 C.D. 2022
                                :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
             Appellant   :

ORDER

AND NOW, this 7th day of August, 2023, the order of the Court of Common Pleas of Allegheny County, dated June 27, 2022, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita