IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia             :

:

      v.              :

:

Roshan and Nasreen Khan,    :    No. 427 C.D. 2023
             Appellants   :    Submitted: June 6, 2024

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON             FILED: July 1, 2024

Roshan and Nasreen Khan (Khans) appeal the April 6, 2023 Final Order for Statutory Fines and Fees (Final Order) of the Court of Common Pleas of Philadelphia County (Trial Court) that imposed a statutory fine in favor of the City of Philadelphia (City) for the Khans' failure to comply with the requirements of the Property Maintenance subcode of The Philadelphia Code (Code)[1] regarding the Khan's property located at 1349 Hollywood Street, Philadelphia, Pennsylvania (Property). Upon review, we affirm.

## I. Background and Procedural Posture

The Property is a one-story brick garage. *See* Reproduced Record (R.R.) at 215a. In April 2017, the City's Department of Licenses and Inspections (L&I) issued an Initial Notice of Violation and Order indicating that L&I inspected the Property on April 20, 2017, and declared the Property unsafe, in whole or in part,

---

[1] PHILA., PA., CODE (Code) §§ 1-100 – 22-1409.

pursuant to Section PM-108.1 of the Code,[2] for violation of Code Section PM-304.1(7)[3] by virtue of having, *inter alia*, cracks and breaks in exterior walls.[4]  *See*

---

[2] Section PM-108.1 of the Code provides that, "[w]hen a structure, equipment, or shared retaining wall is found by the code official to be unsafe, or when a structure is found unfit for human occupancy, or is found unlawful, such structure shall be condemned pursuant to the provisions of this [C]ode."  Code § PM-108.1.  The Code further continues to explain:

> An unsafe structure is a structure, other than a shared retaining wall subject to the provisions of PM-108.1.3, that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

Code § PM-108.1.1.

[3] Regarding exterior structure of buildings, Section PM-304.1 of the Code requires that "[t]he exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare."  Code § PM-304.1.  Specifically, Section 304.1(7) enumerates, as an unsafe condition that shall be repaired or replaced, "[e]xterior walls that are not anchored to supporting and supported elements or are not plumb and free of holes, cracks or breaks and loose or rotting materials, are not properly anchored or are not capable of supporting all nominal loads and resisting all load effects."  Code § PM-304.1(7).

[4] The Initial Notice explained the violations thusly:

> VIOLATIONS:
>
> LOCATION: front, side wall
>
> EXTERIOR WALLS ARE NOT ANCHORED TO SUPPORTING AND/OR SUPPORTED ELEMENTS OR ARE NOT PLUMB AND FREE OF HOLES, CRACKS OR BREAKS AND LOOSE OR ROTTING MATERIALS, ARE NOT PROPERLY ANCHORED OR ARE NOT CAPABLE OF SUPPORTING ALL NOMINAL LOADS AND RESISTING ALL LOAD EFFECTS PM-304.1(7).

Initial Notice of Violation and Order, Case No. 579801, dated April 20, 2017 (Initial Notice) at 1-2, R.R. at 211a-12a. The Initial Notice directed the Khans "to obtain all necessary permits as required by the City and to make repairs or demolish the structure to remove the unsafe condition in order to address public safety." Initial Notice at 1, R.R. at 211a. The Initial Notice further explained that a failure to correct the listed violations would result in, among other penalties, the imposition of fines ranging from $150 to $2,000 for each day that the violations remained uncorrected. *See* Initial Notice at 2, R.R. at 212a. The Initial Notice also informed the Khans of their right to appeal the violations. *See* Initial Notice at 1, R.R. at 211a.

The Khans appealed to the Board of Building Standards (Board), which instructed the Khans to obtain a make-safe permit to remedy the violations. *See* Notes of Testimony, April 6, 2023 (N.T.)[5] at 6 & 14-15, R.R. at 200a & 202a. The Khans did not obtain the make-safe permit as directed, nor did they remedy the violations at the Property.

In July 2021, and again in March 2022, L&I reinspected the Property and discovered that the Khans had not corrected the violations. *See* N.T. at 7, R.R. at 200a; *see also* Final Notice Violation Notice dated March 12, 2022 (Final Notice), R.R. at 213a-14a. On March 12, 2022, L&I issued the Final Notice, which explained that the Property had been reinspected and that the violations remained uncorrected. *See* Final Notice, R.R. at 213a-14a. Thereafter, because the violations remained

---

Initial Notice at 1, R.R. at 211a.

[5] The Reproduced Record includes multiple copies of the April 6, 2023 Notes of Testimony. We cite herein to the condensed transcript included as Exhibit 3 to the Trial Court's June 5, 2023 Opinion (Trial Ct. Op.). *See* R.R. at 198a-205a.

uncorrected, on August 10, 2022, the City filed its code enforcement complaint (Complaint) against the Khans.  *See* Complaint, R.R. at 13a-28a.

The Trial Court conducted a hearing on April 6, 2023, at which the City presented the testimony of L&I Supervisor Thomas Rybakowski as well as copies of the Initial Notice, the Final Notice, and photographs that evidenced the state of the Property at the time of the inspections.  *See* N.T., R.R. at 198a-205a; *see also* Exhibits C-1, C-2, C-3 & C-4, R.R. at 211a-20a.  Mr. Rybakowski[6] testified that he is familiar with the Property and explained that he attended the hearing where the Board instructed the Khans to obtain a make-safe permit.  *See* N.T. at 5-6, R.R. at 200a.  He reviewed the Initial Notice, which he explained L&I issued due to violations that consisted of fractures on the front and side walls of the Property, which fractures were visible in the photographs taken during a June 2021 inspection. *See* N.T. at 6-7, R.R. at 200a; *see also* Initial Notice, Exhibit C-1, R.R. at 211a-12a; June 2021 Property Photographs, Exhibit C-3, R.R. at 215a-17a.  Mr. Rybakowski further explained that the violations remained upon reinspection of the Property in March 2022.  *See* N.T. at 7, 200a; *see also* March 2022 Property Photographs, Exhibit C-4, R.R. at 218a-20a.  Mr. Rybakowski also reviewed photographs taken March 29, 2023, which he conceded indicated that, as of that date, "some type of work ha[d] begun at the [P]roperty."  N.T. at 9, R.R. at 201a.  Mr. Rybakowski noted, however, that "[t]he outstanding violations are still the unsafe conditions that were originally sent in the [Initial] Notice dated April of 2017 for the conditions of the

---

[6] Mr. Rybakowski is the Compliance Supervisor for L&I's Contractual Services Unit of Emergency Response.  *See* N.T. at 5, R.R. at 200a.  The Contractual Services Unit is assigned the task of inspecting properties throughout the City and, when necessary, declaring them unsafe, imminently dangerous, and inspections regarding make-safe permits or demolition permits to satisfy violations.  *See id.*

4

front and side wall fractures." N.T. at 9-10, R.R. at 201a. He confirmed that a make-safe permit for the needed repairs had recently been issued on March 31, 2023, and explained that two inspections would be required under that permit, neither of which had yet occurred. *See* N.T. at 10-11, R.R. at 201a.

The Khans presented the testimony of Roshan Khan as well as photographs of the Property's current condition, an August 10, 2017 invoice/estimate to complete work proposed under the make-safe permit, and the make-safe permit issued by L&I for the Property on March 31, 2023. *See* N.T. at 13-18, R.R. at 202a-03a; *see also* Exhibits D-1, D-2, D-3 & D-4, R.R. at 221a-25a. Mr. Khan testified that he is the owner of the Property, that he received the Initial Notice in 2017, and that he appealed the violations to the Board. *See* N.T. at 14, R.R. at 202a. Mr. Khan explained that the Board advised him to repair the building in stucco, and that he hired an engineer to complete the required work. *See* N.T. at 14-15, R.R. at 202a. Mr. Khan testified that he paid the engineer to submit a permit application,[7] but that the engineer did not do so immediately. *See* N.T. at 15, R.R. at 202a. Mr. Khan testified that, following service of the City's Complaint, he hired his current counsel, retained the engineer once more, and hired a contractor to complete the necessary work at the Property. *See* N.T. at 16-17, R.R. at 202a-03a. Mr. Khan further explained that he obtained a make-safe permit and that the required remediation work has been completed at the Property. *See* N.T. at 17, R.R. at 203a; *see also* Commercial Building Permit, Exhibit D-4, R.R. at 224a-25a.

---

[7] The Khans' counsel proffered the engineer's "proposal for make[-]safe plans" that discussed the scope of work to be conducted as surveying existing conditions and filling out special inspection forms (the application and permit fees for which were to be paid by the Khans). *See* N.T. at 12, R.R. at 201a; *see also* Exhibit D-3, R.R. at 223a.

Following the hearing, on April 6, 2023, the Trial Court issued the Final Order indicating that the Khans had failed to obtain all the necessary permits and and/or make all the necessary repairs to correct the violations present on the Property and assessing a statutory fine of $133,860.00 (Imposed Fine) and reinspection fees of $3,850.00. *See* Final Order at 1-2, R.R. at 49a-50a.

On April 14, 2023, the Khans filed a "Motion for Post Trial Relief and Reduction of Fees" (Post-Trial Motion),[8] seeking a reduction and/or remitter of the statutory Imposed Fine[9] by arguing that the Imposed Fine represents an excessive fine in violation of the Eighth Amendment of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution and constitutes a *de facto* taking because it exceeds the Property's fair market value.[10] *See* Post-Trial Motion at 1-2, R.R. at 52a-53a. The Post-Trial Motion also argued that the Property's defects presented no meaningful risk to the health and safety of the public during the period of violation, that the violations have been remedied and await inspection by the City, and further that the City failed to enforce the violations until the filing of the Complaint. *See id.* The Trial Court denied the Post-Trial Motion by Order and Opinion filed June 5, 2023. *See* Order and Op. dated June 5, 2023 (Trial Ct. Op.), R.R. at 180a-84a. The Khans appealed to this Court.

---

[8] *See* R.R. at 51a-69a.

[9] The Post-Trial Motion did not challenge the $3,850.00 of reinspection fees. *See* Post-Trial Motion, R.R. at R.R. 52a-54a.

[10] The Post-Trial Motion included as an exhibit an attachment of a printout of a property assessment regarding the Property from the City's Office of Property Assessment printed April 13, 2023. *See* Property Assessment, Exhibit A to Post-Trial Motion, R.R. at 62a-65a.

6

## II. Issues

On appeal,[11] the Khans effectively raise three claims.[12]  First, the Khans

claim that the Imposed Fine was excessive.  *See* Khans' Br. at 9-16.  Second, they

---

[11] Our review of this appeal is limited to examining whether the Trial Court abused its discretion or committed an error of law.  *See Lower Southampton Twp. v. Dixon,* 756 A.2d 147, 150 n. 7 (Pa. Cmwlth. 2000).  Further, "[w]hether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014).

[12] The Khans purport to raise six claims, stated as follows:

> 1. Are the fines assessed by the City [] and imposed by the Trial Court excessive under the Eighth Amendment of the United States Constitution [a]rticle 1 [s]ection 13 of the Constitution of the Commonwealth of Pennsylvania?
>
> 2. Did the City meet its burden and establish reasonableness of the fine to the offense, purpose of deterrence; or threat to health and safety?
>
> 3. Did the Trial Court fail to properly weigh aggravating and mitigating factors before assessing punitive fines against [the Khans]?
>
> 4. Was the fine imposed by the Trial Court arbitrary, unreasonable, or an abuse of discretion when representing an indiscriminate percentage of the $3,346,300 assessed fine absent any discernable calculation?
>
> 5. Are the fines sought by the City [] and imposed by the Trial Court[] a *de facto* taking as representing a collection of excessive fines exceeding the property value; imposed for revenue generating purpose rather than an action for enforcement; and as such represent a punitive fine not reasonably calculated as to an underlying offence?
>
> 6. Did the City's delay in enforcement while *passively* accruing "fines" for a period of five[ ]years, violate the Khans' [d]ue [p]rocess rights?

argue that the Imposed Fine was a *de facto* taking.  *See id.* at 19-20.  Third, the Khans claim that the Imposed Fine violates their due process rights.  *See id.* at 21.

## III.  Discussion

### A.  The Imposed Fine was not excessive.

The Khans' first argument – that the Imposed Fine is excessive and unconstitutional – lacks merit.  *See* Khans' Br. at 9-16.  The Eighth Amendment to

---

Khans' Br. at 3 (emphasis in original).  The City counterstates these claims as follows:

> 1.  Did the [T]rial [C]ourt act within its discretion and within constitutional bounds in assessing a $133,860 fine where the Khans' building was seriously deteriorated and was designated "Unsafe" due to its fractured brick walls; where the Board of Building Standards affirmed the "Unsafe" designation and instructed the Khans to hire an engineer and obtain a make-safe permit; where the Khans ignored the problem for six years and did not even obtain a permit until a week before trial; and where they offered no excuse for their lack of diligence?
>
> 2.  Was there no "taking" of the Property where the Khans claim the fine exceeded the market value of the Property, but they did not prove that market value at trial; where a Code enforcement fine is an exercise of the City's police powers, not its eminent domain powers; and where the Khans were never deprived of the use and enjoyment of their Property?
>
> 3.  Did the Khans waive their [d]ue [p]rocess argument based on the City's "delay" between citing the violations and filing an enforcement action where they failed to raise this argument below or develop it on appeal; and further, did the Khans receive adequate due process where they were given notice and an opportunity to be heard, and where the Code did not entitle them to wait for additional reminders or an enforcement lawsuit before repairing their Unsafe [P]roperty?

City's Br. at 2-3.

the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." U.S. CONST. amend. VIII. The Pennsylvania Constitution similarly provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." PA. CONST. art. I, § 13. Fines are considered excessive when they are "grossly disproportional to the gravity of a defendant's offense." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). As our Supreme Court has explained:

> The primary purpose of a fine or a penalty is twofold: to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.

*Commonwealth v. Eisenberg*, 98 A.3d 1268, 1283 (Pa. 2014) (quoting *Commonwealth v. Church*, 522 A.2d 30, 34 (Pa. 1987)) (brackets omitted). Thus, fines must be "reasonably proportionate to the crimes which occasion them." *Eisenberg*, 98 A.3d at 1287. However, "[our Supreme Court] and [this] Court have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed." *Id.* at 1281.

Our Supreme Court has determined that a one-time $75,000 fine imposed for a misdemeanor theft of $200 was constitutionally excessive. *See Eisenberg*, 98 A.3d at 1287. Cumulative fines for continuous violations present a different scenario, however. Our Supreme Court has distinguished cumulative fines that result in large aggregate fines and has found a large aggregate fine based on a per pound sliding scale for overweight vehicles not to be excessive. *See Eisenberg*, 98 A.3d at 1287 n.24; *see also Church*. Similarly, this Court has found – and the

9

Supreme Court has approved – that an aggregate fine in excess of $150,000 based on a $100-$500 per dog/per day penalty scheme and an approximate $100,000 aggregate fine based on a $10 per fish calculation not to be excessive. *See Eckhart v. Dep't of Agric.*, 8 A.3d 401 (Pa. Cmwlth. 2010); *Commonwealth v. CSX Transp., Inc.*, 653 A.2d 1327 (Pa. Cmwlth. 1995). Regarding Code violations specifically, this Court has noted that it would not view as excessive even a $243,200 aggregate fine based on repeated daily violations of the City's building codes. *See DY Props.*, 223 A.3d at 723 n.12; *see also City of Phila. v. Broad and Olney Alliance, LP* (Pa. Cmwlth., No. 49 C.D. 2019, filed July 14, 2020),[13] slip op. at 9-11 (observing that a $26,850 fine imposed as an aggregation of daily fines would be constitutional and not excessive).

Here, the Trial Court imposed a fine of $133,860.00, which represented an aggregation of daily fines for repeated violations of the Code. The violations pertained to unsafe conditions at the Property that persisted for 1,455 days, despite the City providing notice of the violations and demanding their repair. This significant aggregate fine was therefore constitutional as being the result of an accumulation of multiple daily fines arising solely from the Khans' repeated and ongoing violations of the Code. *See Eisenberg*, *DY Props.*, *Eckhart*, *CSX Transp.*, *Broad and Olney Alliance*.

To the extent the Khans claim that the trial court abused its discretion in imposing the $133,860.00 absolute fine, this argument also lacks merit. *See* Khans' Br. at 14-18. "An abuse of discretion is more than just an error in judgment

---

[13] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Belleville v. David Cutler Grp., Inc.* (Pa. Cmwlth., No. 1020 C.D. 2017, filed June 28, 2019), slip op. at 17 (quoting *Commonwealth v. Smith,* 673 A.2d 893, 895 (Pa. 1996)); *see also City of Phila. v. Shih Tai Pien*, 224 A.3d 71, 80 (Pa. Cmwlth. 2019) ("[Abuse of discretion] is a high standard, which requires that [this Court] abide by a trial court's decision absent bad faith, fraud, capricious action or abuse of power.").

This Court has explained that,

> [i]n formulating a sentence [for violations of a property maintenance code], the trial court should weigh all mitigating and aggravating factors and arrive at an appropriate sentence that is consistent with the protection of the public and the gravity of the offense. Considerations should include the history and character of the defendant, the nature and circumstances of the crime; and the defendant's attitude, including a lack of contrition for his criminal conduct.

*Borough of Kennett Square v. Lal*, 643 A.2d 1172, 1175 (Pa. Cmwlth. 1994) (internal citations omitted). The Court has further observed that, "if a sentence imposed is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment." *Lal*, 643 A.2d at 1175.

Section A-601 of the Code specifies the penalties for Code violations. Section A-601.1 provides fines for basic (Class I) Code violations of $300 per offense. *See* Code § A-601.1. Section 601.3 of the Code describes violations

11

constituting Class III offenses[14] and mandates that such violations "shall be subject to the maximum fine set forth in subsection 1-109(3) of [t]he [] Code." Code § A-601.3. In turn, Section 109(3) provides for a maximum fine of $2,000 for each Class III offense committed on or after January 1, 2009. *See* Code § 1-109(3)(e). Section A-601.4 of the Code further explicitly provides that "[e]ach day that a violation continues after issuance of a notice or order shall be deemed a separate offense." Code § A-601.4.

Here, the evidence before the Trial Court established that the Khans committed repeated basic (Class I) and Class III violations of the Code. *See* Final Order at 1-2, R.R. at 49a-50a. Importantly, although they appealed the Initial Notice to the Board in 2017 and were instructed to make repairs, the Khans failed to obtain a make-safe permit or perform the necessary repairs. *See* Final Order at 1, ¶ 4. Additionally, the Khans did not appeal the Final Notice, or otherwise contest the charged violations. *See* Final Order at 1, ¶ 3. Further, Mr. Khan conceded in open court that he received the Initial Notice regarding the violations. *See* N.T. at 14, R.R. at 202a. Thus, it is undisputed that the Khans violated the Code. Moreover,

---

[14] Class III offenses include violations of Code Section PM-108 (Unsafe structures and equipment). *See* Code § A-601.3(13). Code Section PM-108 defines an "unsafe structure" as

> a structure, other than a shared retaining wall subject to the provisions of PM-108.1.3, that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

Code § PM-108.1.1.

the Trial Court imposed a fine in accordance with the aforementioned Code sections. While considerable, the Imposed Fine was the direct result of the Khans' continued uncontested Code violations. In discussing the "crux" of the excessive fines issue, the Trial Court observed:

> The issue is that [the Khans] failed to cure the Property violations for over 1,455 days, an extent of time that caused fines to accumulate as high as $3,346,500.00. A building that collapses on a bystander will have the same harrowing effects regardless of its value. The fines are meant to eliminate risks caused by building violations, so it is more accurate to frame the fine amount relative to the length of time that the Property was in non-compliance. [The Khans] ha[d] more than 1,455 days to correct the violations before the hearing. The [Imposed F]ine was not too excessive because it was representative of the extended period of time in which [the Khans] failed to cure the Property violations.

Trial Ct. Op. at 3, R.R. at 183a. This Court discerns no abuse of discretion on the part of the Trial Court in imposing the $133,860.00 aggregate fine for 1,455 days of one basic Code violation and one Class III Code violation, which Imposed Fine was well within the parameters of the Code.[15]

To the extent the Khans argue that the Trial Court erred in assessing the Imposed Fine by failing to consider mitigating factors, they are not entitled to relief. *See* Khans' Br. at 14-16. This Court has instructed that, in determining zoning code violation sentences, trial courts should consider both mitigating ***and*** aggravating factors to "arrive at an appropriate sentence that is consistent with the protection of

---

[15] We observe that the $133,860.00 aggregate fine equates to a $92.00 daily fine for the Property's collective violations.

13

the public and the gravity of the offense." *Lal*, 643 A.2d at 1175. Here, although they state that the Trial Court failed to weigh mitigating factors in this matter, the Khans fail to identify the specific mitigating factors the Trial Court purportedly ignored. *See* Khans' Br. at 16-18. Further, the Trial Court did consider the Khans' attempt to hire an engineer, the only mitigating factor arguably put forth by the Khans.[16] *See* Trial Ct. Op. at 4, R.R. at 184a. However, the Trial Court also considered in its determination the aggravating factors of the Property having been deemed unsafe pursuant to Code Section PM-108.1[17] and the Khans' failure to cure the violations for over 1,455 days. *See* Trial Ct. Op. at 3-4, R.R. at 183a-84a. In consideration of these factors, the Trial Court still reduced the imposed fine from the statutorily allowed $3,346,500 to $133,860, a mere 4% of the possible fine. *See* Final Order at 2, R.R. at 148a; *see also* Trial Ct. Op. at 4, R.R. at 184a. We find no error in the Trial Court's imposition of the Imposed Fine.[18]

---

[16] To the extent the Khans argue that that the Imposed Fine exceeds the Property's value, Khans' Brief at 19-20, 21, we observe that "[t]he value of [a p]roperty is not a consideration of the trial court in considering fines for violations of the Code." *City of Phila. v. Okamoto* (Pa. Cmwlth., No. 51 C.D. 2019, filed April 29, 2020) (citing *Lal*, 643 A.2d at 1175). A violator's inability to pay a fine, *see* Khans' Br. at 19-20, is likewise not a proper consideration in the appropriateness of a fine imposed under the Code. *See Church*, 522 A.2d at 33 ("There is no constitutional requirement that invalidates the imposition of an otherwise valid fine merely because a defendant lacks the immediate ability to pay it, or would have difficulty in doing so.").

[17] We note that the designation of the Property as "unsafe" per Code Section PM-108.1, which applies in situations where the partial or complete collapse of a designated property is possible, required no further proof by the City that the Property posed a threat to the life, health, property, or safety of the public, as such a threat is explicitly included in the Code's definition of the "unsafe" designation. *See* Code §§ PM-108.1 & PM-108.1.1.

[18] We note that the Khans' characterization of the fine as "punitive," *see* Khans' Br. at 16, 18 & 19, is belied by law and the record in this case as discussed *supra*. We further note that the Khans' suggestion that the City imposed the fine for the purpose of revenue generation, *see* Khans' Br. at 16, is wholly unsupported by any evidence.

14

**B. The Imposed Fine was not a *de facto* taking.**

The argument that the Imposed Fine represents a *de facto* taking of the Property by the City affords the Khans no relief. *See* Khans' Br. at 19-20. In their sparsely developed argument on this issue, the Khans claim that, because the Imposed Fine exceeds the Property's market value, the Court should determine that the Imposed Fine "represents a *de facto* taking and improper forfeiture of private property." Khans' Br. at 20. Initially, this argument depends on the value of the Property, which the Khans failed to establish at the hearing before the Trial Court and only attempted to prove by attaching a printout of a property tax assessment as an exhibit to the Post-Trial Motion. *See* Trial Ct. Op. at 3, R.R. at 183a; *see also* Post-Trial Motion, R.R. at 51a-60a. Accordingly, the evidence of the Property's value is not of record in this matter and the Trial Court correctly declined to consider it. *See Claudio v. Dean Mach. Co.*, 831 A.2d 140, 145 (Pa. 2003) (explaining that a party's failure to present sufficient evidence to support a decision in that party's favor cannot be cured by a motion for post-trial relief seeking consideration of additional evidence); *see also Mehalic v. Westmoreland Cnty. Tax Claim Bureau*, 534 A.2d 157, 158 (Pa. Cmwlth. 1987) (stating that a property's assessed valuation is hearsay and "represent[s] nothing more than *ex parte* statements of the opinion of the assessor[]" and is incompetent to prove a property's fair market value because an "assessment is unreliable and of little probative value") (internal quotation marks and citations omitted).

The Khans' *de facto* taking argument also fails because no taking occurred in this matter. Briefly stated, a "*de facto* taking" is an eminent domain[19] concept that involves, not a physical seizure of property, but rather "an interference

---

[19] *See* Eminent Domain Code, 26 Pa.C.S. §§ 101-1106.

15

with one of the rights of ownership that substantially deprives the owner of the beneficial use of his property." *York Rd. Realty Co., L.P. v. Cheltenham Twp.*, 136 A.3d 1047, 1050-51 (Pa. Cmwlth. 2016) (quoting *In re Borough of Blakely*, 25 A.3d 458, 463-64 (Pa. Cmwlth. 2011)) (emphasis omitted). The law is well settled that

> [i]n order to prove a *de facto* taking, the property owner must establish exceptional circumstances that substantially deprived him of the beneficial use and enjoyment of his property. This deprivation must be caused by the actions of an entity with eminent domain powers. Also, the damages sustained must be an immediate, necessary and unavoidable consequence of the exercise on the entity's eminent domain powers.

*Id.* at 1050-51 (quoting *Blakely*, 25 A.3d at 463-64) (emphasis and footnote omitted). Thus, "[a] property owner carries a heavy burden of proof in *de facto* condemnation proceedings and must show that: (1) the condemnor has the power to condemn the land under eminent domain procedures; (2) that exceptional circumstances have substantially deprived him of the use and enjoyment of his property; and (3) the damages sustained were the immediate, necessary, and unavoidable consequences of the exercise of the eminent domain power." *In Re Mountaintop Area Joint Sanitary Auth.*, 166 A.3d 553, 561 (Pa. Cmwlth. 2017); *see also York*, 136 A.3d at 1050-51. No bright line test exists to determine whether a government action has resulted in a *de facto* taking; each case presents a fact-specific inquiry. *See York*, 136 A.3d at 1050-51. "[W]hen determining whether a *de facto* taking has occurred, we focus on the governmental action in question." *Mountaintop Area Joint Sanitary Auth.*, 166 A.3d at 561.

The instant matter does not involve a condemnation or an exercise of power under eminent domain procedures. Instead, the Imposed Fine represents an

exercise of the City's police power to enforce the Property Maintenance subcode of the Code. While the Khans bemoan the amount of the Imposed Fine, the Imposed Fine has not deprived the Khans of either their title to or the use and enjoyment of the Property. Simply put, no *de facto* taking has occurred in this matter. *Accord Phila. Redevelopment Auth. v. Atuahene*, 229 A.3d 1002, 1013-16 (Pa. Cmwlth. 2020) (explaining that demolition of building to abate nuisance related to persistent code violations was an exercise of police power and not a taking).

## C. The Imposed Fine did not violate the Khans' Due Process rights.

Lastly, the Khans are not entitled to relief on their final argument that their procedural due process rights[20] were violated by the City seeking fines for the entire five-year period following the Initial Notice because the City "delayed" in commencing an enforcement action. *See* Khans' Br. at 21. Initially, we observe that the Khans did not raise this argument before the Trial Court and, thus, it is waived. *See* Pa.R.Civ.P. 227.1(b)(1), (b)(2).

Even if not waived, the Khans' procedural due process argument lacks merit. "The basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Hite v. City of McKeesport*, 312 A.3d 420, 425 (Pa. Cmwlth. 2024) (quoting *J.P. v. Dep't of Hum. Servs.*, 170 A.3d 575, 580 (Pa. Cmwlth. 2017) (internal quotation marks omitted)). There is no argument in this matter that the Khans did not receive notice or that that a trial at which they could present evidence and defend themselves did not occur. Instead, the Khans

---

[20] Because the Khans' due process argument concerns the procedures observed by the City in filing the Complaint, *see* Khans' Brief at 21, we treat the claim as one arguing procedural, as opposed to substantive, due process violations.

17

argue, without support,[21] that the length of time between the Initial Notice and the Complaint was too long and that the City should have filed its enforcement action sooner. This argument lacks merit. It was the Khans' obligation to maintain the Property in compliance with the Code and to complete the required repairs once cited for violations. *See* Phila., Pa., Code § PM-301.2 ("Responsibility. The owner of the premises shall maintain the structures and exterior property in compliance with these requirements…."); *see also* Phila., Pa., Code §§ A-502.1, 502.2, 503.1, 601.4, 601.5. The City adequately notified the Khans of the violations, their obligation to repair the same, and the fact that daily fines could accrue as a result of the failure to do so. *See* Initial Notice; Final Notice. The Khans' failure to comply with the notices received and the direction of the Board upon the Khans' appeal represents the Khans' shortcomings, not any violation of procedural due process on behalf of the City. The Khans' claim to the contrary merits no relief.

## IV. Conclusion

For the above reasons, the Final Order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[21] *See* Khans' Br. at 21.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| City of Philadelphia | : | |
| | : | |
| v. | : | |
| | : | |
| Roshan and Nasreen Khan, | : | No. 427 C.D. 2023 |
| Appellants | : | |

# **O R D E R**

AND NOW, this 1st day of July, 2024, the April 6, 2023 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge